IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:



GUSTAVO A. MORALES,

    Plaintiff,

vs.

CITIGROUP f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES AND JURY TRIAL

Plaintiff, Gustavo A. Morales (hereinafter "Morales"), through his undersigned counsel, sues the Defendant, Citigroup f/k/a the National City Bank of New York, (hereinafter "Citigroup") and states:

### I. JURISDICTION AND VENUE

1. This action arises under Article III of the Constitution of the United States and the common law of the United States and the State of Florida.

2. The jurisdiction of this court is invoked under the provisions of Article III of the Constitution of the United States, the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. 1332.

3. The controversy asserted herein exceeds $75,000.00, exclusive of interest and costs and is between citizens of different States.

4. Venue is appropriate in the Southern District of Florida because Plaintiff is a resident of

1



Miami-Dade County Florida. Additionally Defendant maintains offices throughout Florida including offices in Miami-Dade County, Florida.

## II. PARTIES

5. Morales is a resident of Miami-Dade County Florida and is otherwise sui juris.

6. Citigroup is financial institution organized under the laws of the state of New York doing business in Miami-Dade County, Florida.

## III. STATEMENT OF FACTS

7. On or about September, 1933, Jose Domingo Morales Morales purchased twenty shares of common stock in the National City Bank of New York. On or about June 28, 1934 Jose Domingo Morales Morales purchased thirty additional shares in the National City Bank of New York. These fifty shares were purchase by Jose Domingo Morales Morales for the benefit of his nephew, Jose Morales, the Plaintiff herein (hereafter "Uncle's Shares").

8. Upon information and belief at or about the same time either the same Jose Domingo Morales Morales or Tomas Morales, Plaintiff's father, also purchased approximately 50 specific shares for the benefit of Plaintiff (hereafter "Father's Shares" or "Tomas Morales' Shares") The original certificates of Tomas Morales' shares have been misplaced and are now lost.

9. Both Jose Domingo Morales Morales and Tomas Morales are now deceased.

10. Citigroup has refused to acknowledge the existence of Tomas Morales' shares.

11. For years Morales tried without success to transfer his Uncle's Shares to his name. Each attempt by Morales was met with roadblocks from Citigroup, including but not

2

limited to, Citigroup's insistence on complying with § 515.505 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515, which "blocked" the U.S. accounts and/or asserts of any national of Cuba, who did not obtain a specific license from the Department of Treasury.

12. On February 27, 2002 Morales received license number CU-69273 from the Department of the Treasury. Accordingly, Morales was thereby licensed as an unblocked national of Cuba, allowing all transactions that would otherwise be prohibited under the § 515.505 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515.

13. Treasury license CU-69273 authorized all transactions in connection with the unblocking and transfer to Morales by the National City Bank of New York of shares of the National City Bank of New York stock listed as No. F386904 and No C. 021634 respectively which were formerly owned by Jose Domingo Morales Morales; Uncle's Shares.

14. Even after receiving the Treasury license Citigroup continued to stall and place hurdles before Morales. Citigroup repeatedly "misplaced" documentation provided by Morales. Despite these obstacles, Morales continually demanded that Citigroup confirm the value of all shares. Up until 2002 Citigroup was unable to provide the value and the number of these shares.

15. On September 26, 2002 Citigroup notified Morales that

> Upon examining our company records, we have found that as of June 30, 2002 you were entitled to 4,560 shares of Citigroup Common Stock. Additionally, our records reflect that $19,725.64 had accrued in unpaid dividends, as well as cash in lieu.

3

16. Despite acknowledging the existence 4,560, the Uncle's Shares, Citigroup has provided no information regarding Plaintiff's Father's Shares.

17. Additionally, Citigroup presented that the basis for the calculation of the accumulated dividends was nothing more than the addition of dividends, which would have been paid to the Uncle's Shares over time, with no computation for interest thereon.

18. In fact Citigroup's statement concerning the accrued unpaid dividends and interest is inconsistent with the Foreign Assets Control Regulations.

19. Under the Foreign Assets Control Regulations, Citigroup was required to segregate all monies payable to a blocked recipient in an interest bearing account in a domestic bank. While Citigroup insisted that Morales, the aging victim of a communist dictatorship, comply with the Embargo regulations (requiring a Treasury license) to obtain his own money, Citigroup itself purposely chose to ignore federal law meant to protect the citizens of such communist dictatorship-Cuba.

20. Despite repeated requests for an accounting Citigroup has not provided evidence that it segregated the alleged "accrued unpaid dividends" in an interest-bearing account or otherwise followed Federal law concerning assets under the Cuban Assets Control Regulations.

21. Similarly, despite repeated requests for an accounting Citigroup has not provided evidence that it paid its pre-embargo dividends (1933 to the effective date of the embargo) to Plaintiff's predecessors. Plaintiff asserts that all dividends prior to the embargo should have been reinvested in the stock of the Citigroup pursuant to Plaintiff's father and uncle's instructions.

22. Plaintiff contends that Citigroup has willfully and substantially undervalued the accrued unpaid dividends and interest, which is due to him.

23. Plaintiff asserts that the value of his current share holdings in Citigroup should be increased by treating the unpaid, unsegregated dividends as having been reinvested in Citigroup on the dividend date at the closing price of that stock on said date. Citigroup did not pay those dividends to Morales and did not pay them into a segregated interest bearing account. As such, Morales' moneys remained at risk just as any shareholder's equity –at Citigroup's disposal. Citigroup, kept the money in its operating account and/or used the money free of interest.

24. Citigroup denies that Morales is entitled to anything other than the actual accrued dividend at the value, which was due at the time it was due, and then only for the dividends declared after the embargo. Citigroup claims that no dividends are owed for any period prior to the Embargo.

25. Accordingly, if Morales was owed a dividend of $1.00 in 1963, Citigroup wants to pay Morales no more than $1.00 in 2005, over forty years later. Similarly, it contends that if a $1.00 dividend was owed in 1953 (prior to the Embargo), it was already paid, though it offers no proof of such payment.

26. Nevertheless, Citigroup has maintained and used all of Morales stocks, accrued dividends and interest from 1933 until the effective date of the Cuban embargo and again from such effective date to the present. Now after more than seventy years of unparralled growth, partially with those funds, Citigroup attempts to use the lack of records prior to 1961 and the Foreign Assets Control Regulations after 1961 as a

5

weapon against Cubans and Cuban Americans, one of the classes persons which the embargo was meant to protect.

27. In essence, Citigroup is banking on the fact that most of its Cuban shareholders are currently living in poverty and facing the much tougher life-and-death decisions that come with communist dictatorships, and that these Cubans are without access to information on their own shares, and hence are unlikely to claim them. Moreover, Citigroup is taking the bold step of attempting to pay those that do claim their money, with measly sums representing the original principal without interest for over forty years, in this case for over seventy years. Citigroup's position toward Morales and possibly towards its Cubans shareholders may be resumed as follows:

> because you have lived in poverty for such a long time, and because your rights to your assets have been frozen for such a long time, this is simply a windfall for you and you should therefore be happy to get whatever we wish to give you.

This position not only discriminates against Morales and similarly situated Cuban Americans by treating him differently than other non-Cuban shareholders, but it also exploits the human suffering of a nation; a nation, which, as evidenced herein, has provided a number of investors and clients for Citigroup in the past. Morales contends that Citigroup's position is immoral and illegal.

28. Citigroup's simplistic and unjustified calculation refuses to acknowledge that Citigroup kept Plaintiff's accrued dividends and interest for over seventy years without the alleged benefit of generating even one cent of even simple interest.

29. Morales has repeatedly demanded that Citigroup accurately account for the value of his shares, accrued interest and dividends. Contrary to Citigroup's calculations

6

Morales asserts that the value of his shares including accrued dividends and interest is several millions of dollars.

### III. DECLARATORY JUDGMENT

30. Plaintiff incorporates paragraph 1 through 29 as if fully set forth herein.

31. A substantial continuing controversy exists between Plaintiff and Defendant concerning the quantity and value of Plaintiff's stock ownership in Citigroup including accrued dividends and interest.

32. This dispute is a continuing controversy, which is not conjectural, hypothetical or contingent.

33. This dispute is real and immediate and creates a definite rather than speculative threat of future injury.

34. Plaintiff asserts a reasonable expectation that the injury suffered will continue or will be repeated in the future.

35. As set forth above, there exist a present practical need for a judicial declaration.

WHEREFORE, Plaintiff, Jose Morales, demands a declaratory judgment against Defendant, Citigroup, which declares that Plaintiff, Jose Morales is entitled to:

    a.    compensatory damages including all accrued dividends and interest of Plaintiff's Uncle's Shares calculated by reinvestment at the time within which the dividend and interest was earned,

    b.    punitive damages

    c.    attorney's fees

    d.    costs

7

e.  and all other relief this court deems just and equitable.

## IV. CONVERSION

36. Plaintiff incorporates paragraph 1 through 29 as if fully set forth herein.

37. Plaintiff is the heir and owner of approximately 50 specific shares purchased by his father from the National City Bank of New York on or about 1931 through 1934.

38. These shares were never sold or otherwise transferred by the Plaintiff or his father.

39. Plaintiff has continually demanded that Defendant acknowledge the existence of the shares, and all dividends and interest accrued thereon.

40. Defendant denies the existence of any of Plaintiff's Father's Shares.

41. Accordingly, Defendant refuses to return to Plaintiff his Father's Shares and all dividends and interest accrued thereon.

42. By refusing to acknowledge and return to Plaintiff his Father's Shares and all dividends and interest accrued thereon, Defendant converted to its own use Plaintiff's Father's Shares and all dividends and interest accrued thereon the value of which exceeds three quarter of one million dollars.

WHEREFORE, Plaintiff, Jose Morales, demands judgment against Defendant, Citigroup, for:

a.  Compensatory damages including the return of Plaintiff's Father's Shares and all accrued dividends and interest calculated by reinvestment at the time within which the dividend and interest was earned,

b.  punitive damages,

8

    c. attorney's fees,

    d. costs,

    e. and all other relief this court deems just and equitable.

## V. EQUITABLE ACCOUNTING

43. Plaintiff incorporates paragraph 1 through 29 as if fully set forth herein.

44. Plaintiff seeks an equitable accounting of Plaintiff's Uncle's Shares and Tomas Morales' shares, including all accrued interest and dividends.

45. Citigroup has a fiduciary duty to the Plaintiff as a stockholder.

46. Citigroup has violated this fiduciary duty by refusing to adequately account for Plaintiff's Uncle's Shares and Tomas Morales' shares.

47. Moreover, determination of adequate number of shares and valuation of these shares over the protracted life of the shares requires review of financial data from complicated accounts and involve complex transactions.

48. There is no adequate remedy at law available to the Plaintiff.

49. Further, any possible remedy at law in this case would not be as full, adequate and expeditious as is a remedy at equity for an accounting.

WHEREFORE, Plaintiff, Jose Morales, demands judgment against Defendant, Citigroup, for:

    a. A detailed equitable accounting of Plaintiff's Uncle's Shares and Tomas Morales' shares including all accrued dividends and interest thereon,

    b. attorney's fees,

    c. costs,

    d. and all other relief this court deems just and equitable.

9

## VI. JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: August 16, 2005

Respectfully submitted,

**DORTA & ORTEGA, P.A.**
2222 Ponce de Leon Blvd., Suite 306
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226

By: _____
Omar Ortega, Esq.
Fla. Bar No: 0095117

# CIVIL COVER SHEET

CIV - GOLD

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Gustavo A. Morales

**DEFENDANTS**
CitiGroup f/k/a The National City Bank of New York

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Code 28USC 2285/ Gild/Turnoff
Omar Ortega, Esq.
Dorta & Ortega, P.A.
2222 Ponce De Leon Blvd. #306
Coral Gables, FL 33134

Attorneys (If Known)
MAGISTRATE JUDGE
TURNOFF

(d) Check County Where Action Arose: ☒ DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS - PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**TORTS - PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity)):
28 USC 2201 Declaratory Judgment Act, Wrongful Retention of Stock

LENGTH OF TRIAL via 3 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 8/11/05
SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____

$250.00 92583
08/17/05