FILED by _____ D.C.
ELECTRONIC

**Jan 5 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 05-22285-CIV-GOLD

GUSTAVO A. MORALES,

  Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL
CITY BANK OF NEW YORK,

  Defendant.

_____/

## DEFENDANT CITIGROUP'S MEMORANDUM IN
## SUPPORT OF MOTION TO TRANSFER VENUE

CASE NO. 05-22285-CIV-GOLD

# TABLE OF CONTENTS

**FACTS**

    A.. The Nature of the Dispute.............................................................................. 3

    B. The Parties............................................................................................... 4

    C. The Substance of Plaintiff's Allegations ........................................... 4

    D. This Case Has No Connection to Florida ........................................... 5

**ARGUMENT**

    I.  This Court Has Broad Discretion to Transfer Upon a Lessened Showing of Inconvenience .................................................................... 9

    II. This Action Should be Transferred to New York Because New York Because is a More Convenient Forum .................................................... 10

        A. This Action Might Originally Have Been Brought in New York ............ 10

        B. The Balance of Interests Favor the Southern District of New York ......... 11

            1.     *Plaintiff's Choice of Forum Should Enjoy Little Weight* .................. 11
            2.     *The Operative Events Did Not Take Place in This District* ............... 12
            3.     *The Interests and Convenience of the Parties Favors Transfer to New York* ................................................. 13
            4.     *The Convenience of the Witnesses Favors Transfer to New York* ........... 14
            5.     *The Location of Physical Evidence Favors Transfer to New York* ........ 15
            6.     *Other Factors Favor Transfer to New York* .................................. 16

**CONCLUSION** ......................................................................................... 17

2

This case does not belong in this District. Most, if not all, of the relevant witnesses, documents, and other sources of proof are located in New York. Simply stated, nothing about this case or the underlying transaction at issue has any connection to Florida, other than the fact that the Plaintiff, Gustavo A. Morales, is a Cuban national who has emigrated here. All the relevant documents are located in New York as are all the witnesses, with the exception of Plaintiff himself.

Defendant Citigroup, Inc. ("Citi"[1]) therefore moves pursuant to 28 U.S.C. § 1404(a) to transfer venue to the United States District Court for the Southern District of New York. Citi also has moved to stay this action pending resolution of its Motion to Transfer for reasons of judicial economy.

## FACTS

### A.  The Nature of the Dispute

Plaintiff has sued Citi claiming that he is the rightful owner of certain shares of Citi stock and that he is entitled to disputed amounts of interest and dividends on that stock. Specifically, Plaintiff alleges that his deceased uncle, Jose Domingo Morales Morales, purchased 50 shares of stock (the "Uncle's Shares") in what was then The National City Bank of New York ("National City Bank") and that these shares were purchased for Plaintiff's "benefit."[2] A.Compl., ¶ 7, 9. Plaintiff further alleges that, about the same time, his deceased father, Tomas Morales, also

---

[1] Citigroup, Inc. is a holding company and the parent and affiliate of various entities. For the sake of simplicity, these collective entities will be referred to simply as "Citi."

[2] Stock share certificates do not have designated "beneficiaries" like insurance policies do. Plaintiff does not allege that he received the stock through his uncle's will or through any other probate mechanism. Plaintiff's claim that he is the rightful owner of this stock thus is vague at best.

3

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

purchased 50 shares of National City Bank stock (the "Father's Shares") for Plaintiff's benefit,[3] but that these original share certificates were misplaced and are now lost. Id. at ¶ 8, 9.

### B.    The Parties

Plaintiff claims to be an "unblocked" Cuban national.[4] Id. at ¶ 12. As a result, Plaintiff claims he is now permitted to engage in financial transactions with Citi that would previously have been prohibited under the Cuban Assets Control Regulations. Id.

Citigroup, Inc. is a Delaware corporation, with its principal place of business in New York, New York. P.Pellegrine Dec., ¶ 2 (attached hereto as Exhibit "A"). Citi's files and records relating to this matter, as well as the vast majority of all of its files and records, are maintained in the New York area. Id. To the best of its knowledge, Citi has no files, records or witnesses relating to this matter in Florida. Id.

### C.    The Substance of Plaintiff's Allegations

Prior to filing this lawsuit, Plaintiff contacted Citi directly in an attempt to transfer the alleged Uncle's and Father's Shares to his name. A.Compl. ¶ 11; P.Pellegrine Dec., ¶ 3. He submitted limited documentation to Citi in New York in support of his claims. P.Pellegrine Dec., ¶ 3. Those documents include copies of various original share certificates, a document from the United States Treasury Department reflecting, and copies of two documents that purport to be a Cuban "Sworn Statement and Death Certificate" and a "Special Power of Attorney." Id.

---

[3] This allegation suffers from the same deficiencies with regard to Plaintiff's claim that he is some sort of "beneficiary" of the alleged shares.

[4] In the early 1960s, the U.S. government issued what is known as the Cuban Assets Control Regulations, 31 C.F.R. § 515.201 et. seq., These regulations were designed to impose economic sanctions against Cuba by "blocking" all financial transactions with Cuban nationals and "freezing" any Cuban assets subject to the jurisdiction of the United States.

4

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

Plaintiff admits that, in response to his submission, Citi investigated Plaintiff's claims in New York, searched its records in New York, and found evidence of the purchase of the Uncle's Shares. See A.Compl., ¶¶ 14-16, 26. Citi also has investigated Plaintiff's claims and searched its records in New York with regard to the alleged existence of the Father's Shares, but its records show that no such shares exist. P.Pellegrine Dec., ¶ 4 .

Plaintiff alleges that Citi is stonewalling his attempts to recover the Uncle's and Father's Shares, and that Citi is using the Cuban Asset Control Regulations and denying the existence of records prior to the embargo to avoid re-issuing the stock and paying Plaintiff what he claims he is due. A.Compl., ¶¶ 11, 14-21, 26. He claims that that he is entitled to several millions of dollars based upon this stock he claims he owns. Id. at ¶ 29.

Finally, Plaintiff goes so far as to allege that Citi's conduct is willful and discriminatory, and that Citi is using the alleged lack of records and the Cuban Assets Control Regulations as a "weapon" against Cubans and Cuban Americans. Id. at ¶¶ 22, 26-27.

### D. This Case Has No Connection to Florida

Plaintiff's uncle's and father's alleged stock purchases took place in Cuba in the early 1930s. See Id. at ¶¶ 7 – 8, 11, 13. Since the early 1960s, Citi and its alleged predecessors[5] have maintained centralized records regarding all "blocked" Cuban assets in its possession. P.Pellegrine Dec., ¶ 5. These records relating to stocks, securities, and transfers of funds in "blocked accounts" are maintained in New York. Id.

---

[5] Citi does not make any admissions with regard to any successor corporation liability alleged in any other claims, whether by this Plaintiff or any other parties

5

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

At the time of Plaintiff's uncle's and father's alleged stock purchases, National City Bank[6] acted as its own transfer agent and issued the alleged stock certificates in New York. Id. Since then, all interest and dividends allegedly owing were generated in New York, and any new shares resulting from stock splits or dividend bonuses were issued and held by the relevant entity's transfer agent in New York.[7] Id.

In addition, the witnesses and proofs relating to Citi's "alleged" lack of records prior to the embargo, the reasonableness of its interpretation of the applicable regulations, its interest and dividend calculations, and its alleged "willful" and discriminatory conduct are located in New York.

Citi's Depositary Receipts Department is responsible for the file maintenance and retention policies with respect to historical records of share ownership in Citi and its predecessors. It is also responsible for investigating Plaintiff's claim of entitlement to Citi stock, and for the interest and dividend calculations on shareholder accounts, including "blocked" Cuban national shareholder accounts. Id. at ¶ 9.

There are approximately 25 current employees in Citi's Depositary Receipts Department, with their offices located in New York. Many of these employees, including several high-ranking executives, have knowledge of facts relevant to this case. Id.

For example, Citi anticipates relying on the testimony of Peter Pellegrine, Senior Vice President. Mr. Pellegrine manages both the Depositary Receipts Operations and the Agency and Trust Operations, with a combined staff of 51 persons. Id. at ¶ 10. He is responsible for

---

[6] Again, Citi does not make any admissions with regard to any successor corporation liability alleged in any other claims, whether by this Plaintiff or any other parties.
[7] Again, without admitting successor corporation liability, depending on the time of the stock issuance, the operative entity may have been different.

6

overseeing all aspects of the processing and controls for issuance and cancellation of American depositary receipts, dividends and tax reclamation, bond issuance/transfer payments, vault and window, escrow processing, customer service and vendor management. Id.

Douglas Reed is another example of an individual that Citi anticipates will be necessary to its defense. Mr. Reed is a Vice-President, who works in the Depositary Receipts and Agency and Trust Operations areas. Id. at ¶ 11. He manages various operational units, including payment, issuance/transfer, window and vault, customer service and vendor management. Id.

Yet another example of an individual upon whose testimony Citi anticipates relying is Clifford Kendelhardt. Mr. Kendelhardt is a Vice President in the Depositary Receipts and Account Management. Id. at ¶ 12. He is responsible for the administration of all U.S. accounts for these departments. Id. Mr. Kendelhardt has been involved in this aspect of Citi's business for over 35 years, including 24 years in operations. Id.

Messers. Pellegrine, Reed and Kendelhart are all examples of individuals with specific knowledge of issues such as whether Citi in fact has any records relating to this case, the steps Citi has taken to investigate the alleged existence of Plaintiff's uncle's and father's stock, Citi's conclusions regarding the sufficiency of the documentation Plaintiff submitted in support of his claims of entitlement, and how Citi calculated the interest and dividends due on the Uncles' Shares. Id. at ¶ 13. Indeed, they are examples of individuals with decision-making authority who participated directly in Citi's investigation and conclusions regarding Plaintiff's claims. As such, they are key witnesses in this case. Given their positions and responsibilities, however, it would be disruptive to Citi's operations in New York for them to have to travel to Florida for this case. Id. at ¶ 14.

7

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

Finally, Citi's Bank Regulatory Department, also located in New York, is principally responsible for its compliance with the Cuban Assets Control Regulations. Records related to Citi's compliance with the Control Regulations are maintained in New York. Serena D. Moe, Assistant General Counsel, has knowledge of how Citi interpreted its obligations under the regulations and whether the analysis was done in good faith. S.Dietz Dec., ¶ 2 (attached hereto as Exhibit "B").

In addition to Citi executives and employees, key third-party witnesses that are beyond this Court's subpoena power are also in the New York area. For example, since 1999, Computershare, an outsource vendor, has been retained to process transactions as Citi's transfer agent. P.Pellegrine Dec., ¶ 7. In this capacity, Computershare is responsible for complying with all SEC requirements on Citi's behalf. Id. These responsibilities include maintaining all relevant records, including master files and copies of all investigations. Id. Computershare is also responsible for meeting all Securities and Exchange Commission ("SEC") requirements with regard to retention and processing standards. Id..

Citi's Computershare account is administered out of Computershare's offices in Jersey City, New Jersey, and individuals with knowledge of facts relevant to this case are located there. Id. at ¶ 8. For example, John Gaffney, Computershare's Senior Account Manager responsible for Citi's account, is based in Computershare's Jersey City office. Id. at ¶ 8.

Finally, to the extent that proofs might exist anywhere other than the New York area, those proofs are almost all certainly in Cuba. Plaintiff's claim is essentially that he is the rightful owner of assets from his uncle's and father's estates. The relevant evidence with regard to this claim thus consists of Cuban probate records.

8

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

## ARGUMENT

### I. THIS COURT HAS BROAD DISCRETION TO TRANSFER UPON A LESSENED SHOWING OF INCONVENIENCE

The change of venue statute, 28 U.S.C. § 1404, allows for the transfer of an action, even though venue is proper in the district where the action is pending, if the district to which the action can be transferred offers a more convenient forum. See 28 U.S.C. § 1404(a). This section is a revision, rather than a codification, of the *forum non conveniens* doctrine. Reyno v. Piper Aircraft Co., 630 F.2d 149, 157 (3$^d$ Cir. 1980), *reversed on other grounds*, 454 U.S. 235 (1981).

Section 1404(a) permits federal courts to transfer venue upon a lesser showing of inconvenience than was previously required, since the harshest result of the common-law doctrine of *forum non conveniens*, dismissal, was eliminated by the statute. Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955). Indeed, section 1404(a) was designed to give federal trial courts broader discretion to transfer venue than was previously allowed by *forum non conveniens*. Mobil Corp. v. S.E.C., 550 F. Supp. 67, 70 (S.D.N.Y. 1982). Thus, the statute is more lenient in authorizing transfers, and the moving party carries a less stringent burden in demonstrating that transfer is warranted. Akers v. Norfolk & W. Ry. Co., 378 F.2d 78, 79 (4th Cir. 1967).

"The determination of whether the circumstances warrant transfer under § 1404(a) is 'peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation,'" the federal district courts. Roofing & Sheet Metal Servs. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 985 (11th Cir. 1982) (citation omitted). Accordingly, the decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion. See Norman v. Wilks, 179 F.R.D. 640, 643

9

(M.D. Fla. 1998) (noting that "ruling [on transfer] can be overturned only for clear abuse of discretion and presumption in favor of district judge is heavy") (citation omitted).

## II. THIS ACTION SHOULD BE TRANSFERRED TO NEW YORK BECAUSE NEW YORK IS A MORE CONVENIENT FORUM

In order to warrant transfer pursuant to section 1404(a), two conditions must be present: (1) the Southern District of New York must be a forum in which this case originally might have been brought, and (2) the Southern District of New York must be a more convenient forum for this case than this District. Both of these factors are satisfied here.

### A. This Action Originally Might Have Been Brought in New York

In order to transfer this action pursuant to section 1404(a), this Court must first determine that this action "might have been brought" in New York. 28 U.S.C. § 1404(a). This requirement is satisfied if the movant shows that the plaintiff initially could have filed the action in the transferee court. See Miot v. Kechijian, 830 F. Supp. 1460, 1465 (S.D. Fla. 1993).

That this action might have been brought in New York is clear.

First, the Southern District Court in New York, as does this Court, has both diversity and federal question jurisdiction over this action.

Second, venue is proper in the Southern District of New York because "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b)(2). For example, all of the stock was issued in New York. The interest and dividends were generated in New York. The frozen account was (and is) maintained in New York. All of Citi's decisions with regard to the account were made in New York. Finally, it cannot be disputed that, for purposes of the claims sued upon, Citi is subject to personal jurisdiction in the Southern District of New York, where it is headquartered.

10

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

### B. The Balance of Interests Favor the Southern District of New York

As the statute provides, a district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate under the statute, courts consider a number of factors, including the initial choice of forum, the district where the operative events underlying the complaint took place, the convenience of the parties and witnesses, the availability of compulsory process and the cost of obtaining the presence of witnesses, the ease of access to sources of proof and the location of documents, and the public interest. See, e.g., Meterlogic, Inc. v. Copier Solutions, Inc., 185 F. Supp. 2d 1292, 1300 (S.D. Fla. 2002); Moghaddam v. Dunkin Donuts, Inc., 2002 WL 1940724, *2 (S.D. Fla. 2002); Jewelmasters, Inc. v. May Dep't Stores Co., 840 F. Supp. 893, 895 (S.D. Fla 1993).

Each of these factors militates in favor of transferring this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

### 1. Plaintiff's Choice of Forum Should Enjoy Little Weight

The first factor that courts generally consider when determining whether a convenience transfer is proper is the plaintiff's choice of forum. Normally, a plaintiff's choice of forum is entitled to deference and should be respected "unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).

The plaintiff's choice of forum, however, does not enjoy near-controlling weight under § 1404(a) as it did under the common-law doctrine of *forum non conveniens*. First Nat'l Bank of Minneapolis v. White, 420 F. Supp. 1331, 1337 (1976). Moreover, deference to plaintiff's choice of forum is significantly diminished, *even when the plaintiff is a resident of the transferor*

11

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

*forum,* in situations when, as here, "the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff." Windmere Corp. v. Remington Prods., Inc., 627 F. Supp. 8, 10 (S.D. Fla. 1985); Lynch v. Vanderhoef Builders, 237 F. Supp.2d 615, 617 (D. Md. 2002); Stolz v. Barker, 466 F. Supp. 24, 27 (M.D.N.C. 1978 (noting proposition in context of securities action). Indeed, where, as here, all operative facts occurred outside the chosen forum and all the witnesses also live outside the chosen forum, plaintiff's choice is entitled only to minimal weight. Kachal, Inc. v. Menzie, 738 F. Supp. 371, 373 (D. Nev. 1990).

Plaintiff's choice of forum in this case should thus enjoy little weight.

    2.    *The Operative Events Did Not Take Place in This District*

The location where the operative events underlying the action occurred is another factor courts consider in determining whether transfer is warranted. See Jewelmasters, 840 F. Supp. at 896; see also Windmere, 627 F. Supp. at 10. This District has no relationship whatsoever with this case. The lack of any references to South Florida in Plaintiff's Amended Complaint attests to that deficiency.

Here, all of the operative events occurred in New York and Cuba. The alleged stock purchases were made in Cuba. The shares were issued in New York. The interest and dividends were generated in New York. Prior to the embargo, the payments were sent to Plaintiff's uncle[8] in Cuba.[9] Since the embargo, they have been maintained in a "frozen" account in New York.

---

[8] As the Amended Complaint reflects, Citi acknowledges the existence of the Uncle's Shares, but denies the existence of the Father's Shares. A. Compl., ¶ 16.

[9] The fact Plaintiff's allegations imply that Citi did not pay pre-embargo dividends does not change the analysis. If Citi failed to comply with any obligation to pay Plaintiff's uncle pre-embargo dividends, which Citi denies, that alleged breach would have occurred in Cuba, where the payment was due, or New York, where Citi failed to comply.

12

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

Citi's decisions with regard to the account were all made in New York. And, finally, the assets of Plaintiff's uncle's and father's estates were distributed in Cuba.[10]

      3.     *The Interest and Convenience of the Parties Favors Transfer to New York*

Decisions regarding convenience transfers also take into account the convenience of the parties. Because Plaintiff has chosen a forum with no connection to this case, Citi's principal place of business —New York—weighs heavily in favor of transfer.

For Plaintiff, the burden of litigating in New York will not be significantly greater than litigating in South Florida. All of the relevant Citi employees and witness are located in New York. Plaintiff will have to depose them there even if the case were to stay here anyway. See Fed. R. Civ. P. 45(a)(2) & (b)(2). Thus, regardless of whether this case takes place in New York or in South Florida, Plaintiff will have to travel. Courts reason that, when the plaintiff will have to travel regardless of transfer, but a transfer would permit the defendant to litigate in the location of its residence, transfer is warranted. See, e.g., McEvily v. Sunbeam-Ostger Co., 878 F. Supp. 337, 344 (D.R.I. 1994).

For Citi, however, having to litigate in South Florida would be burdensome and prejudicial. All witnesses within Citi's control would be forced to travel to Miami from New York at significant cost to Citi, disrupting work schedules and the operation of Citi's Depositary Receipts department in New York. Similarly, the relevant documents would need to be shipped to South Florida. Citi thus would incur substantial expense and hardship if forced to litigate outside of its residence. And, to the extent Citi will need to rely on the testimony of key third-

---

[10] Citigroup anticipates that Plaintiff will not dispute that, regardless of whether Plaintiff's uncle and father had wills or died intestate, Cuban law required some form of estate administration to distribute the assets of their estates. Should Plaintiff take issue with this point, Citigroup requests leave to submit evidence on Cuban law.

13

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

party witnesses, such as executives and employees of Computershare, Citi will be prejudiced unless it can persuade those individuals to travel voluntarily to Florida. See Fed. R. Civ. P. 45(a)(2) & (b)(2).

Considerations of the interests and convenience of the parties thus dictate that transfer of this action is warranted. McEvily, 878 F. Supp. at 344 (holding that transfer warranted to defendant corporation's home district when trial in foreign district would disrupt work schedules of witness-employees); Transcontinental Serv. Corp. v. True Temper Corp., 319 F. Supp. 920, 921-22 (S.D.N.Y. 1970) (transfer warranted where, *inter alia*, all of defendants' relevant files and documents were located in transferee district, employees of defendant most familiar with situation resided in district, and no potential witnesses resided in transferor or were subject to compulsory process there); see also Fontana v. E.A.R., 849 F. Supp. 212, 214-15 (S.D.N.Y. 1994) (transferring case where relevant third-party witnesses were beyond transferee court's subpoena power and plaintiff's choice of forum was entitled to little weight since there was no material connection to transferor forum); Arrow Electronics, Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989) (availability of compulsory process is important consideration in determining whether to transfer).

### 4. The Convenience of the Witnesses Favors Transfer to New York

The convenience of the witnesses is an important factor in transfer analysis. See Gould v. National Life Ins. Co., 990 F. Supp. 1354, 1359 (M.D. Ala. 1998). At this point, Citi foresees relying on the testimony of various high-ranking executives and managers based in New York, New York.

14

As set forth in detail in the factual recitation above, examples of some of these key witnesses include: Peter Pellegrine, Senior Vice President, Depositary Receipts and Agency and Trust Operations; Douglas Reed, Vice-President, Depositary Receipts and Agency and Trust Operations; and Clifford Kendelhardt, Vice President, Depositary Receipts and Account Management. As noted, Messers. Pellegrine, Reed and Kendelhart all have specific knowledge of facts relevant to this case, such as the existence and location of relevant documents, document retention, Citi's investigation of Plaintiff's claim and the results of that investigation, and all details regarding interest and dividend calculations.

As further set forth in the factual recitation, Citi will also need to rely on the testimony of employees from it Bank Regulatory Department with regard to the Cuban Assets Control Regulations. While Citi cannot determine with absolute certainty at this juncture the total number of witnesses that will ultimately be necessary, it is clear that the convenience of the witnesses and the costs associated with obtaining their presence at trial would, be served by transferring this action to New York. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 522 (D.N.J. 1998) (transfer favored when defendant's witnesses are in the proposed transferee district and plaintiff will have to travel anyway); USF&G v. Republic Drug Co., 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992) (same).

     *5.*     *The Location of Physical Evidence Favors Transfer to New York*

The ease of access to documents and other physical evidence is another factor pertinent to consider on a motion to transfer. See, e.g., Jewelmasters, 840 F. Supp. at 896. Again, the relevant documents in Citi's possession relating to this case are located in New York.

15

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

The location of documents is especially important in a case involving substantial document discovery. Here, Plaintiff alleges that "determination of [sic] adequate number of shares and valuation of those shares over the protracted life of the shares requires review of financial data from complicated account that involve complex transactions." A.Compl., ¶ 47. Citi does not waive any rights to object to burdensome discovery requests in this matter, but Plaintiff obviously contemplates extensive discovery of documents spanning more than 70 years, and all of the evidence is located in New York.

By contrast, Plaintiff only has limited documentation in support of his claims -- all of which apparently has been produced to New York already -- and transporting any additional documents to New York would thus pose no additional burden on Plaintiff.

The location of the relevant documents thus supports transfer to New York.

### 6. *Other Factors Favor Transfer to the Southern District of New York*

Yet another factor that bears on the propriety of transfer is that the public interest lies in having controversies decided in the places where they arose. See <u>Tischio</u>, 16 F. Supp. 2d at 526 ("[T]he forum with the more significant contacts with the events resulting in the instant litigation, has a strong public interesting adjudicating this dispute."). Because all relevant events that took place in the United States occurred in New York, that forum has a heightened interest in resolving this dispute, particularly in light of the fact that this case involves claims regarding securities and transfer agency. This District, by contrast, has a far lessened interest in the adjudication of this controversy because it is not a local one.

The "interest of justice" required by the transfer statute is fully satisfied by a transfer here for another reason: it will promote a fair trial. <u>See, generally, Latimer v. S/A Industrias</u>

16

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

Reunidas F Matarazzo, 91 F. Supp. 469, 471 (S.D. N.Y. 1950) (noting that in determining whether the common-law doctrine of *forum non conveniens* should be applied, the court should weigh the "relative advantages and obstacles to a fair trial"). Here, the Amended Complaint contains outlandish statements regarding Citi's alleged willful and discriminatory treatment of Cuban nationals and Cuban Americans.[11] These inflammatory allegations are nothing more than a transparent attempt to capitalize on the demographic composition of the South Florida jury pool, where tensions and emotions run high with regard to the embargo and the suffering of the Cuban people.

## CONCLUSION

Based on the foregoing, Citigroup respectfully requests that this Court enter an order transferring this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## CERTIFICATE OF COUNSEL

Counsel for Citigroup certifies that, prior to serving and filing this Motion, counsel attempted to confer with counsel for Plaintiff in an effort to agree on or narrow the issues raised herein, but was unable to do so. Counsel for Citigroup will promptly notify the Court as soon as it is able to confer with counsel for the Plaintiff with regard to whether Plaintiff opposes the relief requested herein.

---

[11] For example, Plaintiff alleges that Citi considers any release of blocked assets a "windfall" to any Cuban national who have had their assets frozen and "lived in poverty for such a long time," that Citi believes that its Cuban shareholders should be "happy to get whatever [Citi] wish[es] to give [them]," and that Citi is "banking on the fact that most of its Cuban shareholders are currently living in poverty and facing the much tougher life-and-death decisions that come with communist dictatorships, and that these Cubans are without access to information." A.Compl. ¶ 27.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

Respectfully submitted,

/s/ Elena M. Marlow
**ASTIGARRAGA DAVIS MULLINS &
GROSSMAN, P.A.**
José I. Astigarraga, Edward M. Mullins &
Elena M. Marlow
Fla. Bar No. 263508, 863920 & 139858
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel:(305) 372-8282
Fax:(305) 372-8202
E-mail: emarlow@astidavis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to **Omar Ortega, Esq.**, Dorta & Ortega, P.A., 2222 Ponce de Leon Blvd., Suite 306, Coral Gables, FL 33134 this 5th day of January 2006.

/s/ Elena M. Marlow
Elena M. Marlow

F:\WDOX\CLIENTS\10016\5002\00051975.DOC

18

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-22285-CIV-GOLD

GUSTAVO A. MORALES,

      Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL
CITY BANK OF NEW YORK,

      Defendant.

_____/

# EXHIBIT "A"

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-22285-CIV-GOLD

GUSTAVO A. MORALES

      Plaintiff,

v.

CITIGROUP f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

      Defendant.

_____/

## DECLARATION OF PETER PELLEGRINE

I, Peter Pellegrine, hereby declare pursuant to 28 U.S.C. § 1746, as follows:

1.   I have reviewed the Amended Complaint in the above-captioned matter and Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue. I make this declaration in support of Citigroup's Motion to Transfer Venue, and have personal knowledge of the facts stated herein.

2.   Citigroup, Inc. is a Delaware corporation, with its principal place of business in New York, New York.[1] Citi's files and records relating to this matter, as well as the vast majority of all of its files and records, are maintained in the New York area. To the best of my knowledge, Citi has no files, records or witnesses relating to this matter in Florida.

3.   Prior to filing this lawsuit, Plaintiff contacted Citi regarding certain shares of stock that he claims are owned by his deceased uncle and deceased father. He submitted

---

[1] Citigroup is a holding company, and the parent and affiliate of various entities. I refer to these collective entities simply as "Citi" in this declaration.

limited documentation to Citi, including copies of various original share certificates, a document from the United States Treasury Department reflecting, and copies of two documents that purport to be a Cuban "Sworn Statement and Death Certificate" and a "Special Power of Attorney."

4.      In response, Citi investigated Plaintiff's claims in New York, searched its records in New York, and found evidence of the purchase of his uncle's shares. Citi also investigated Plaintiff's claims and searched its records in New York with regard to his claim that his deceased father also owned shares of stock, but its records show that no such shares exist.

5.      Since the early 1960s, Citi has maintained centralized records regarding all "blocked" Cuban assets in its possession. These records relating to stocks, securities, and transfers of funds in "blocked accounts" are maintained in New York.

6.      In the 1930s, when Plaintiff claims his uncle and father purchased their stock, Citi (then the National City Bank of New York) acted as its own transfer agent and issued the alleged stock certificates in New York. Since then, all interest and dividends allegedly owing were generated in New York, and any new shares resulting from stock splits or dividend bonuses were issued and held by the relevant entity's transfer agent in New York.

7.      Since 1999, Computershare, and outsource vendor, has been retained to process transactions as Citi's transfer agent. In this capacity, Computershare is responsible for complying with all SEC requirements on Citi's behalf. These responsibilities include maintaining all relevant records, including master files and copies of all investigations.

Computershare is also responsible for meeting all SEC requirements with regard to retention and processing standards.

8.      Citi's Computershare account is administered out of Computershare's offices in Jersey City, New Jersey, and individuals with knowledge of facts relevant to this case are located there. For example, John Gaffney, Computershare's Senior Account Manager responsible for Citi's account, is based in Computershare's Jersey City office.

9.      Citi's Depositary Receipts Department is responsible for its file maintenance and retention policies with respect to historical records of share ownership in Citi and its predecessors. It is also responsible for investigating Plaintiff's claim of entitlement to Citi stock, and for the interest and dividend calculations on shareholder accounts, including "blocked" Cuban national shareholder accounts. There are approximately 25 current employees in Citi's Depositary Receipts Department, with their offices located in New York. Many of these employees have knowledge of facts relevant to this case.

10.    I am a Senior Vice President in Depositary Receipts Operations and Agency and Trust Operations. In this capacity, I manage both Depositary Receipts Operations and Agency and Trust Operations, with a combined staff of 51 persons. I am responsible for overseeing all aspects of the processing and controls for issuance and cancellation of American depositary receipts, dividends and tax reclamation, bond issuance/transfer payments, vault and window, escrow processing, customer service and vendor management.

11.    Douglas Reed is a Vice-President, who works in the Depositary Receipts and Agency and Trust Operations areas. He manages various operational units, including payment, issuance/transfer, window and vault, customer service and vendor management.

12.    Clifford Kendelhardt is a Vice President in the Depositary Receipts and Account Management. He is responsible for the administration of all U.S. accounts for these departments. Mr. Kendelhardt has been involved in this aspect of Citi's business for over 35 years, including 24 years in operations.

13.    Messers. Reed and Kendelhart and I all have personal knowledge regarding the facts of this case. For example, we have knowledge of issues such as whether Citi in fact has any records relating to this case, the steps Citi has taken to investigate the Plaintiff's claims, Citi's conclusions regarding the sufficiency of the documentation Plaintiff submitted in support of his claims, and how Citi calculated the interest and dividends due on the stocks.

14.    Given our positions and responsibilities, it would be disruptive to Citi's operations in New York for Messers. Reed, Kendelhart and I to travel to Florida for this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5 day of January 2006, in New York, NY

Peter Pellegrine

F:\WDOX\CLIENTS\10016\5002\00052048.DOC

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-22285-CIV-GOLD

GUSTAVO A. MORALES,

     Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL
CITY BANK OF NEW YORK,

     Defendant.

_____/

# EXHIBIT "B"

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-22285-CIV-GOLD

GUSTAVO A. MORALES

      Plaintiff,

v.

CITIGROUP f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

      Defendant.

_____/

## DECLARATION OF STEPHEN E. DIETZ

I, Stephen E. Dietz, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am General Counsel-Corporate Litigation of Citibank, N.A.and have reviewed the Amended Complaint in the above-captioned matter and Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue. I make this declaration in support of Citigroup's Motion to Transfer Venue, and have personal knowledge of the facts stated herein.

2.      Citigroup's Bank Regulatory Department, located in New York, is principally responsible for its compliance with the Cuban Assets Control Regulations. Records related to Citigroup's compliance with the Control Regulations are maintained in New York. Serena D. Moe, Assistant General Counsel, and Robin Powell, U.S. Sanctions Officer, have knowledge of how Citigroup interpreted its obligations under the regulations and whether the analysis was done in good faith.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January 2006, in New York, New York.

STEPHEN E. DIETZ