IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-22285 CIV GOLD

GUSTAVO A. MORALES,

      Plaintiff,

vs.

CITIGROUP, INC. f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

      Defendant.

_____/



# PLAINTIFF, GUSTAVO A. MORALES', MEMORANDUM IN SUPPORT OF RESPONSE TO CITIGROUP'S MOTION TO TRANSFER VENUE

Plaintiff, Gustavo A. Morales, (hereinafter "Morales") has properly brought this action in the United State District Court, for the Southern District of Florida. Defendant, Citigroup, Inc. f/k/a The National City Bank of New York (hereinafter "Citigroup") seeks to transfer this case to impose a hardship on Morales in the hopes of dissuading Morales from pursuing the injustice which the Defendant has caused.

## I.    Factual Allegations

Contrary to Citigroup's allegations, the Southern District of Florida is an apt venue for this litigation. A plethora of witnesses, documents and evidence are located in Florida. The wrongs which have been committed, have been committed against a Florida resident by a Connecticut entity authorized to transact business in Florida. Additional witnesses to the allegations of those matters set forth in the Amended Complaint are located in Miami, other parts of the United States outside of New York and Cuba. If any federal court has the experience and familiarity with



1

lawsuits involving witnesses, documents and evidence involving Cuba it stands to reason it would be this Honorable Court.[1]

"The Plaintiff's choice of forum should not be disturbed unless it is *clearly outweighed* by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (Fla. 11th Cir. 1996). Citigroup's attempt to transfer venue is simply an effort to shift inconvenience from the Defendant to the Plaintiff. This alone does justify the requested transfer. *Id.* at 260.

Defendant claims that "most, if not all, of the relevant witnesses, documents, and other sources of proof are located in New York." This is simply not true. First, the stock at issue was purchased in Cuba on or about 1934. See Exhibit "A" attached to the Affidavit of Omar Ortega attached hereto as Exhibit "1" (Hereinafter "Ortega Aff."). correspondence from The National City Bank of New York acknowledging the purchase of stock in Havana. Plaintiff's uncle, one of the purchasers, lived and died in Cuba. The documents concerning his ownership of the stock at issue have been maintained in either Cuba or Miami including the deceased's sworn statement, its translation and death certificate. See Ortega Aff. ¶ 9. Likewise Defendant asserts that all relevant witnesses are in New York. Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue (hereinafter "Defendant's Memorandum") p. 3. Again, Citigroup turns a blind eye towards the facts in this litigation. First, the Plaintiff is probably the most relevant witness in this matter. The Plaintiff, as set forth in the Amended Complaint, is a resident of Miami Dade County, Florida. Complaint ¶ 4. Second, the family members of the deceased, Plaintiff's father and uncle who purchased the shares, reside in Miami Dade County, Florida or Cuba. Ortega Aff. ¶¶ 5-6; Felipe

---

[1]It should be noted that even Defendant concedes that certain evidence will necessarily derive from Cuba. Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue p. 8.

Aff. ¶¶ 10-11. These individuals will be witnesses in any trial or hearing.[2] Third, there are other individuals beyond the Plaintiff and his family that reside in Miami-Dade County and areas outside of the Southern District of New York which will be witnesses in this matter. By way of example, Plaintiff anticipates calling Plaintiff's pre-litigation attorneys who tried in vain to obtain relief for the Morales. Ortega Aff. ¶ 4. These attorneys include Marcell Felipe, whose office is located in Miami, Florida. Ortega Aff. ¶ 4; Felipe Aff. Mr. Morales was also represented by other attorneys with offices in Miami, Boston and Louisiana. ¶ 4. Moreover, even Defendant's own employees who have been involved in this matter, and which Plaintiff anticipates calling as witnesses, are located in Miami and other parts of the country, beyond the cozy confines of the Southern District of New York. Ortega Aff. ¶ 4; Felipe Aff. ¶ 8. For example, Ethan Menendez, Citicorp Investment Services, 7795 West Flagler Street, Suite 46-47, Miami, Florida 33144; Jodi Lee, Citibank Shareholder Relations, P.O. Box 43077, Providence, RI 02940-3077, Joseph Zingalli and Kamran Inayat, Citicorp Data Distribution, Inc., a subsidiary of Citicorp., P.O. Box 308, Paramus, NJ 07653.[3] Ortega Aff. ¶ 4; Felipe Aff. ¶ 8. Other witnesses include, but will not be limited to, employees of the United States Department of the Treasury, Washington, D.C., 20220, Oscar P. Leyva, translator 6780 Coral Way, Miami, Florida; R. Perez, Notary State of Florida, Commission Number CC709826; and Thomas H. Norton, Translator/Interpreter, 555 S. Luna Ct., #308, Hollywood, Florida 30021. Ortega Aff. ¶ 4; Felipe Aff. ¶ 8.

Plaintiff does not deny that the Defendant may very well have witnesses in New York such as Mr. Pellegrine, Mr. Reed and Mr. Kendelhart. Defendant's Memorandum p. 7-8. It would be

---

[2] Defendant's Memorandum admits as much by suggesting that "Plaintiff's claim that he is the rightful owner of this stock is vague at best." Defendant's Memorandum p. 3 fn. 2. Plaintiff anticipates that Defendant will seek to challenge his ownership of the stocks and would therefore be required to present additional witnesses all of which reside in either Miami or Cuba.

unimaginable that no witnesses from Citigroup f/n/a the *City Bank of New York* worked in New York. Nevertheless, simply because "it would be disruptive to Citi's operations in New York for them to travel to Florida for this case" is not a basis to transfer venue. Defendant's Memorandum p. 7. Clearly it would be quite disruptive for the Plaintiff and the plethora of witnesses set forth above to travel to New York in order to prosecute this claim. It is worth noting, that the witnesses addressed by Citigroup relate to the investigation of Plaintiff's complaint and the existence of records regarding Plaintiff's shares. Defendant's Memorandum p. 7. No witness residing in New York, proffered by the Defendant has any first hand knowledge other than as a result of their review of a particular record or transactions. Additionally, Defendant's allegations that Citigroup's Depository Receipts Department has 25 employees and its Depository Receipts Operations and the Agency and Trust Operations has a combined staff of 51 persons should carry little weight. Defendant's Memorandum p. 6. Plaintiff is quite confident that Citigroup has thousands of employees. Nevertheless this Court's rules would surely limit the number of witnesses which may be called.

Likewise, the only third party witness presented by Defendant does not reside in New York, nor would likely be subject to the jurisdiction of the Southern District of New York. Defendant's Memorandum p. 8. This witness, John Gaffney, and his employer Comuptershare, are based out of Computershare's Jersey City office. Jersey City is subject to the Jurisdiction of the District Court for New Jersey. In fact, Jersey City is outside of the appellate jurisdiction of the Southern District of New York which is governed by the Second Circuit Court of Appeals as apposed to New Jersey, which is governed by the Third Circuit Court of Appeal. Even to the extent these witnesses would be within 100 miles of the Southern District of New York and therefore possibly under the

---

[3] Once again Defendant chooses to ignore the involvement of it employees in this matter

4

subpoena power of the Court, they are not just witnesses favorable to the Defendant, but moreover, their own agents. Defendant's Memorandum p. 8.

## II.  **LEGAL ARGUMENT**

A Federal Court's decision to transfer a matter under 28 U.S.C. 1404(a) requires a two step analysis. First, the Court must make the initial determination that the matter might have been brought in the proposed transferee district court. *Windmere Corp. v. Remington Products, Inc.*, 617 F. Supp. 8, 10 (S. D. Fla. 1985), citing *Continental Grain v. THE Barge FBL-585*, 364 U.S. 19, 80 S. Ct. 1470, 4 L.Ed.2d 1540 (1960). Plaintiff does not dispute that this matter might have been brought in the United States District Court for the Southern District of New York.

Next "the Court must weigh various factors in order to determine if a transfer to a more convenient forum is justified." *Windmere*, 617 F. Supp. at 10, citing, *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970).

> The courts have traditionally considered several factors in determining whether the doctrine of forum non conveniens should apply to a particular case. Those factors are: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel presence of unwilling witnesses; (5) cost of obtaining presence of witnesses; (6) the public interest.

*Windmere*. 617 F. Supp. at 10, citing, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L. Ed. 1055 (1947); *Abramson v. INA Capital Management Corp.*, 459 F. Supp. 917 (E.D.N.Y. 1978); *Poncy v. Johnson and Johnson*, 414 F. Supp. 551 (S.D. Fla. 1976). A review of the foregoing factors requires that Defendant's request for a transfer of venue be denied. "The Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions, stating that '[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations.'" *Eye Care International v. Underhill*, 119 F.

Supp.2d 1313, 1317 (M.D. Fla. 2000), citing, *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996), quoting, *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B 1981)), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982). It is the movant that has the burden of persuasion and "[u]nless the balance strongly favors defendant, plaintiff's choice of forum will *rarely* be disturbed." *Eye Care International*, 119 F.Supp.2d at 1317, citing, *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 341 (8th Cir. 1983). Simply stated, Citigroup cannot establish that Plaintiff's "choice of … forum, creates problems of convenience for Defendant and his witnesses 'of *such a substantial nature* that transfer is appropriate in the interest of justice.'" *Eye Care International,* 119 F.Sup..2d at 1317.

### 1.     Plaintiff's Choice of Forum Should Control

Plaintiff has not chosen Florida at a whim simply for his own pleasure. Rather, as discussed in detail above a number of witnesses which will be called to testify in this matter reside in Florida or Cuba. Defendant suggests that "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff." Defendant's Memorandum p. 12. Once again Defendant has chosen to ignore those facts which negate its position. For example, the purchase of stock occurred in Havana, the damage which has been inflicted on Morales occurred in Miami, the demands by Morales have been made in Miami, and the evidence concerning ownership will be derived solely from Miami and Havana.

### 2.     The Interest and Convenience of the Parties Weighs Against a Transfer to New York.

Without any basis Defendant states "[f]or Plaintiff, the burden of litigating in New York will not be significantly greater than litigating in South Florida." Without question it is likely that

6

Plaintiff's counsel will be required to depose employees of Citigroup. Nevertheless, the need for depositions will likely be reduced given other discovery methods which will be available to Plaintiff and which will undoubtedly minimize the need for extensive depositions of Defendants employees. Defendant's reliance on *McEvily v. Sunbeam-Oster Company, Inc.*, 878 F. Supp. 337 (D. R.I. 1994) is highly questionable. A review of the *McEvily* opinion reflects that the Plaintiff in *McEvily* filed suit in a jurisdiction in which he was not a resident, as such "maintenance of this suit in Rhode Island, rather than Florida, will not be any more convenient to the plaintiff." *McEvily*, 878 F. Supp. at 344.[4]

Further, the *McEvily* court specifically found that the "Company's witnesses cannot be considered to be inconvenienced by a trial in Rhode Island simply because it would interfere with the performance of their duties for the Company. Clearly as employees of the Company, they have an incentive to travel to Rhode Island and testify in support of their employer. *Id.* at 346, citing, *Sterling Novelty, Inc. v. Smith*, 700 F. Supp. 408, 410 (N.D. Ill. 1988).[5] Yet this is specifically what Citigroup has chosen to argue before this court. Defendant's Memorandum p. 13 ("All witnesses within Citi's control would be forced to travel to Miami from New York at significant cost to Citi, *disrupting work schedules and the operation of Citi's Depository Receipts department* in New York."

**3.     The Convenience of Witnesses Favors Retaining Jurisdiction**

Almost all non party witnesses in this matter reside in Miami-Dade county Florida. The only witnesses located in New York, even by Defendant's own statements, are its own employees.

---

[4] In *McEvily* the Plaintiff an Illinois resident filed suit in Rhode Island against a Delaware Corporation with its principal place of business in Florida. *McEvily*, 878 F. Supp. at 341.

[5] Defendant miraculously has cited *McEvily* for the exact opposite position stating that *McEvily* held "that transfer [was] warranted to defendant's corporation's home district when trial in a

As such, it is the Court in the Southern District of Florida that wields the greatest power in compelling a witness's attendance at trial. First, this Court already has jurisdiction over every known witness that has been suggested by either side which resides in New York; namely the Defendant's employees. By participating in this litigation, the Defendant must comply with orders of this Court, including but not limited to, those relating to its employees. Second, this Court has jurisdiction to enforce those subpoenas issued in its own jurisdiction; namely most of those *non – party* witnesses relied upon by the Plaintiff. Third, the Southern District of New York is in no better position than the Southern District of Florida when it comes to compelling attendance of witnesses in Cuba or other states, including those witnesses suggested by Defendant in New Jersey. In fact, it stands to reason that it would be Plaintiff, not Defendant, who is disadvantaged by lack of subpoena power over Defendant's witness in New Jersey. As set forth above, the closest Federal Court to the country of Cuba would seem to have the most thorough experience in handling the execution of process.

In light of the fact that most non-party witnesses reside in Florida, it would be counter-productive to transfer this matter to New York. "The possibility that a case may be tried where certain crucial witnesses could not be compelled to attend is an important consideration. Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from compelling attendance of material witnesses is unacceptable . . . ." *Poncy v. Johnson and Johnson*, 414 F.Supp. 551, 556 (S.D. Fla. 1976), citing, *Commercial Solvents Corp. v. Liberty Mutual Ins. Co.*, 371 F.Supp. 247, 250 (S.D.N.Y. 1974).

**4.      Claims of the Location of Physical Evidence in New York are Greatly Exaggerated**

---

foreign district would disrupt work schedules of witness-employees".

As set forth above, a number of documents and evidence are located in Miami, Cuba and other states outside of New York. Moreover, Defendant's suggestion that this claim involves substantial document discovery is perplexing. Defendant's Memorandum p. 16. The claims herein stem from the purchase of stock during approximately a two year period in 1934. After that remaining documentation should be minimal at best. First, once the stock is issued the dividends paid and splits, if any, are matters of public record. This information takes little more than a trip to a library, in any city, to research the Capital Changes Reporter, or a search on the internet. Further, to the extent Citigroup would have complied with the applicable embargo evidence of a segregated account, should be a simply matter of reviewing an isolated account. Moreover, Defendant's own motion weighs against transfer based on the location of documents. Defendant's Memorandum states:

> For example, since 1999, Computershare, an outsource vendor, has been retained to process transactions as Citi's transfer agent. P.Pellegrine Dec., ¶7. In this capacity, Computershare is responsible for complying with all SEC requirements on Citi's behalf. Id. These responsibilities include maintaining all relevant records, including master files and copies of all investigations. Id. Computershare is also responsible for meeting all Securities and Exchange Commission ("SEC") requirements with regard to retention and processing standards. Id..
>
> Citi's Computershare account is administered out of Computershare's offices in Jersey City, New Jersey, and individuals with knowledge of facts relevant to this case are located there. Id. at ¶ 8.

Defendant's Memorandum p. 8. Accordingly, the documents that Defendant suggests are so voluminous are actually kept in New Jersey, not New York. Moreover, the party responsible for the documents is a company named "**Computershare**" that claims to be a "single-source services and solution" providing "print and digital document management." See Ortega Aff. ¶¶ 10-11; Exhibit "2" to Ortega Aff. Computershare "was established … to

provide specialist computer bureau services." Ortega Aff., Exhibit 2. A review of

Computershare's website reflects that it

> offer[s] companies direct access to Internet products and an information
> resource that will give you desktop access to information and data that
> Computershare administers on your behalf. This free, user friendly services
> gives our clients <u>instant access</u> to information on key aspects of their share
> and security holder registers.
>
> Log in to Issuer Online to interrogate your register in many ways, including
> running standard reports such as Top 10-200 shareholder lists, submitting
> real-time enquiries such as an issued capital query and reporting by holding
> range. <u>To ensure privacy, this area of our site has high-level security with
> password protection.</u>

Ortega Aff., Exhibit 2. Accordingly, it seems clear that access to the "voluminous"

documents relied upon by the Defendant can likely be accessed in any state of the Union so

long as you have the appropriate password. In the age of information it is a hollow claim to

assert the difficulties of document production. See e.g., *Robinson v. Giarmarco & Bill,*

*P.C.*, 74 F.3d 253, 260 (1996)(stating "[t]he burden on the defendants occasioned by

litigating outside of Michigan is not slight, but modern methods of transportation and

communication reduce this burden significantly."), citing, *McGee v. International Life Ins.*

*Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

## 5. The Public Interest Demands that this Matter Remain in the Southern District of Florida.

The public interest is not served by allowing the Defendant, a multi-billion dollar

company, to dictate where it chooses to be sued simply to obtain a tactical advantage.

Forcing an elderly immigrant to chase after the "Bank of New York" would seem much

more against public interest than requiring a company, who already does business in

10

Florida, to respond to its actions there. Despite its claims otherwise, there is no basis to believe the Citigroup will not receive a fair trial. Defendant's Memorandum p. 16. This case will be tried on its merits not on rhetoric. It is disingenuous claim that Plaintiff has chosen South Florida as a jury pool because "tension and emotions run high with regard to the embargo and the suffering of the Cuban people." Defendant's Memorandum p. 17. The Plaintiff should not be punished because he lives in the great State of Florida. Moreover, the Cuban Assets Control Regulation is a Federal law enacted to oppress communism; a goal of the nation as a whole not simply construct of an oppressed Cuban community.

## CONCLUSION

Based on the foregoing, Citigroup's request that this Court transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) should be denied.

Respectfully submitted,

**DORTA & ORTEGA, P.A.**
2222 Ponce de Leon Blvd., Suite 306
Omar Ortega
Fla. Bar. No. 0095117
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
E-mail: ortegalaw@bellsouth.net

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to Elena

M. Marlow, Astigarrga Davis Mullins and Grossman, P.A., 701 Brickell Avenue, 16th Floor,

Miami, Florida 33131 this 20th day of January 2006.

Omar Ortega

12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-22285 CIV GOLD

GUSTAVO A. MORALES,

      Plaintiff,

vs.

CITIGROUP, INC. f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

      Defendant.

_____/

# EXHIBIT "A"

## AFFIDAVIT OF OMAR ORTEGA IN SUPPORT OF PLAINTIFF, GUSTAVO A. MORALES', MEMORANDUM IN SUPPORT OF RESPONSE TO CITIGROUP'S <u>MOTION TO TRANSFER VENUE</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-22285 CIV GOLD

GUSTAVO A. MORALES,

      Plaintiff,

vs.

CITIGROUP, INC. f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

      Defendant.

_____/

## AFFIDAVIT OF OMAR ORTEGA IN SUPPORT OF PLAINTIFF, GUSTAVO A. MORALES', MEMORANDUM IN SUPPORT OF RESPONSE TO CITIGROUP'S MOTION TO TRANSFER VENUE

I, Omar Ortega, hereby declare pursuant to 28 U.S.C. § 1746 , as follows:

1. I have reviewed Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue. I make this declaration in support of Plaintiff's Gustavo A. Morales', Memorandum in Support of Response to Citigroup's Motion to Transfer Venue and I have personal Knowledge of the facts stated herein.

2. I am lawyer and member in good standing of the Florida bar.

3. I have been retained as litigation counsel to prosecute this claim against Citigroup.

4. I have personally investigated this case and have determined that Plaintiff will likely be required to call the following individuals with regards to proving the Plaintiff's claims:

    a. Marcell Felipe, Esquire, 888 Brickell Ave., 5th Floor, Miami, FL 33131.

Mr. Felipe has knowledge of Plaintiff's claim for the stock at issue in this case. Additionally, Mr. Felipe has had direct contact with the Defendant and its employees. Mr. Felipe has knowledge of Citigroup's response and statements made by employees who allegedly investigated Mr. Morale's claims.

b. Ethan Menendez, Citicorp Investment Services, last known address, 7795 West Flagler Street, Suite 46-47, Miami, Florida 33144. Mr. Menendez, a Citigroup employee communicated directly with Mr. Felipe and Mr. Morales regarding the claims asserted in the complaint.

c. Jodi Lee, Citibank Shareholder Relations, last known address, P.O. Box 43077, Providence, RI 02940-3077. Ms. Lee, a Citigroup employee communicated directly with Mr. Felipe and Mr. Morales regarding the claims asserted in the complaint.

d. Joseph Zingalli and Kamran Inayat, Citicorp Data Distribution, Inc., a subsidiary of Citicorp., last known address, P.O. Box 308, Paramus, NJ 07653. Mr. Zingalli and Ms. Inayat, both Citigroup employees communicated directly with Mr. Morales and his counsel regarding the claims asserted in the complaint.

e. Employees of the United States Department of the Treasury, Washington, D.C., 20220. Employees of the United States Department of the Treasury have knowledge of Plaintiff's application and approval to lift the freeze on his assets.

f. Oscar P. Leyva, translator last known address, 6780 Coral Way, Miami,

Florida. Mr. Leyva translated document involved in this litigation.

    g. R. Perez, Notary State of Florida, Commission Number CC709826, 8429 N.W. 7th Street, Miami, Florida 33126. R. Perez notarized served as a notary on issues raised in the complaint.

5. Additionally, I aware there are a number of witnesses in the Plaintiff's family located in both Miami-Dade County, Florida as well as Cuba that will provide testimony establishing Plaintiff's entitlement.

6. Included in these family members is Marilyn Morales, Plaintiff's daughter who also resides in Miami-Dade County, Florida.

7. To this end there are documents maintained both in Miami and Cuba that will likewise establish Plaintiff's entitlement.

8. There are also various documents concerning the issuance of stock which are located in Miami and Cuba. For example, correspondence from The National City Bank of New York dated June 4, 1934 attached hereto as Exhibit "A".

9. I have also inspected the documents concerning Morales' ownership of the stock at issue which have been maintained in either Cuba or Miami including the deceased's sworn statement, its translation and death certificate.

10. Furthermore, I have researched Computershare and have attached relevant portions of their website hereto as Exhibit "2".

11. A review of these excerpts reveals that Computershare provides computer support and computer access to its customers. Accordingly, with an appropriate password a person could access a plethora of information, including but not limited to those items involved in this case, through the internet from anywhere in the world.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 20th day of January 2006, in Miami, Florida.

Sworn and subscribed by:

Omar Ortega

State of Florida        )
County of Miami-Dade    )

The foregoing instrument was sworn to and subscribed before me this 20th day of January 2006, by Omar Ortega, Esq. who is personally known to me.

Rey Dorta
Notary Public – State of Florida

Reinaldo J. Dorta, Jr.
Commission #DD217382
Expires: May 29, 2007
Bonded Thru
Atlantic Bonding Co., Inc.

# The National City Bank
## of New York

ESTABLISHED 1812
CABLE ADDRESS "CITIBANK"

Caibarien, Cuba

Junio 4 de 1934

IN REPLYING PLEASE QUOTE INITIALS

PV

Sr. José Morales Morales
General Carrillo

Muy señor nuestro:

Conforme a las ordenes dadas por Vd. nos informa nuestra Oficina de Habana el haber cerrado la operacion de compra de treinta Acciones de The National City Bank of New York, al tipo de $27.75.

La liquidacion ha sido efectuada en la siguiente forma:

| | | |
|---|---|---:|
| 30 acciones al tipo de $27.75. | $ | 832.50 |
| Servicios. | | 7.50 |
| Impuesto de O.P. 1/4 | | 2.08 |
| Seguro y Franqueo. | | .50 |
| Timbre. | | .75 |
| Cambio | | .83 |
| Total:------------ | $ | 844.16 |

Rogamos tenga la bondad de enviarnos un cheque por la suma de $4.16, con el fin de completar esta operacion, devolviendonos a la vez la copia de esta carta que adjuntamos, dandonos su conformidad a esta operacion.

Oportunamente le seran remitida las acciones o en su defecto el certificado correspondiente.

Al tanto de sus gratas ordenes, quedamos.

Muy atentamente,

Sub-Contador.

EXHIBIT
1

## About us

We are a leading financial market services and technology provider for the global securities industry. Our people, operating on five continents, provide services and solutions to listed companies, investors, employees, exchanges and other financial institutions.

We manage more than 90 million shareholder accounts for over 14,000 corporations

## Single-source services and solutions

- transfer agency (share registry)
- employee share plans
- print and digital document management
- market intelligence
- cross-border-listing
- Depository Interests
- Financial markets software

## Local knowledge, global reach

We offer proven solutions designed and delivered by people in your core market; trusted experts who embrace your business goals as their own. By combining extensive local knowledge with international expertise we are able to deliver efficient cross-border capabilities. Experts at handling large global accounts, we've managed the full range of transactions and services for thousands of clients worldwide. The advantage of this experience is evident in how we manage our customers needs – on your terms, in your market, anywhere in the world.

Trusting your needs to us places you in expert hands, allowing you to focus on driving your own business and investment goals

**Document Services**

Experience counts:
We produce 250 million client documents every year.

Copyright © 2005 Computershare Limited. All rights reserved. Reproduction in whole or in part, in any form or medium without express written permission of Computershare Limited is prohibited. Please view our Privacy policy.



EXHIBIT

Z

About Computershare / Corporate Profile / Company History

## Company History

Our company was established in Melbourne in 1978 to provide specialist computer bureau services to Australian share registrars. We listed on the Australian Stock Exchange in 1994 with an initial market capitalisation of AUS36 million.

With a strategy to provide shareholder services to the global securities industry we expanded our registry businesses, entering the New Zealand, Australian and United Kingdom markets in 1997. At the same time we moved into the development of exchange and broker systems, significantly extending our range of products and services on offer to the international securities industry.

During 1998/9 we acquired registry businesses in Ireland, South Africa and Hong Kong. The Hong Kong acquisition established our presence in Asia whilst considerably strengthening our position in the UK due to the high levels of cross-ownership between Hong Kong and the UK.

Our global expansion continued in 2000 with acquisitions of the stock transfer business of Harris Bank in the US, the stock transfer and corporate trust businesses of Montreal Trust in Canada, the employee plans business of Merrill Lynch in the US, and in December, the UK's leading institutional share ownership analysis business, Citywatch.

In 2001 we acquired complementary businesses Financial Data Concepts LLC (U.S.), Plan Managers Pty (Australia) and took full ownership of Central Registration Hong Kong Limited. In 2002 we merged our Hong Kong share registration business with Hong Kong Exchanges and Clearing Limited (HKEx), the holding company of the Hong Kong stock and derivatives exchanges and their associated clearing houses, to form an entity called Computershare Hong Kong Investor Services Limited (CHIS) to hold a major position in share registration services in that market.

We acquired the employee stock purchase plan business of Charles Schwab in 2002, further strengthening our competitive position in the employee plans business in the US. We also acquired EFA Group's assets, including the software rights to EFA's trading, settlement and clearing systems and expanding our Markets Technology portfolio. During that year we also formed a number of partnerships in various countries for the strategic supply of our services and expertise.

Finally, we launched a joint venture with Deutsche Borse AG, the leading European exchange and technology organization to form Deutsche Borse Computershare GmbH to provide share registration and related services to the European market.

In 2003 we purchased the share registry and employee plans businesses of Fifth Third Bancorp in the US. We also completed the acquisition of Georgeson Shareholder Communications, the world's oldest and most highly regarded security holder solicitation and response firm. We also acquired an initial stake in ComputersharePepper SRM, in partnership with Pepper Technologies, based in Germany, and purchased an interest in the National Registry Company of Russia.

In 2004 Computershare acquired Transcentive Inc. the leading provider equity plan administration and financial reporting solutions. We also announced our entry into the Indian securities and mutual fund registry market through the purchase of a 50% share in India's leading registry business. We also took full ownership of Pepper Technologies AG, and launched eTree initiatives in Australia, the UK, Canada and the US, allowing millions of shareholders to choose to receive electronic shareholder communications in exchange for having trees planted.

June 2004 saw Computershare increase its stake in Russian registrar NRC to 45%, making it the largest shareholder in the corporation. Other acquisitions throughout the year included Alamo Direct (print, mail, tabulation and proxy solicitation specialist in North America), Flag (a UK employee communications company), and Post Data (electronic and paper-based marketing specialist in Perth).

Late in the year, Computershare reported that it had sought regulatory approval to acquire US transfer agency giant, EquiServe.

In 2005 we have finalised our purchase of EquiServe (now operating under the Computershare name), the largest transfer agent in the US, which added some 1,300 companies into Computershare's client base, including corporate institutions such as Ford Motor Company, Exxon Mobil Corporation, IBM Corporation, and more than half of the companies in the Dow Jones Industrial Average.

Other important acquisitions included Post-Tech Direct Marketing print and mail solutions and transfer agent service provider Pacific Corporate Trust Company in Canada

The Fixed Income Services group was also established this year. In partnership with our strong Canadian corporate trust business, it will look to generate opportunities within the global fixed income arena

Copyright © 2005 Computershare Limited. All rights reserved. Reproduction in whole or in part in any form or medium without express written permission of Computershare Limited is prohibited. Please view our Privacy policy.

## Client Services

Welcome to the section of our website dedicated to companies, issuers and our clients.

We are pleased to offer companies direct access to Internet products and an information resource that will give you desktop access to information and data that Computershare administers on your behalf. This free, user-friendly service gives our clients instant access to information on key aspects of their share and securityholder registers.



**Our clients are celebrating and so are we.**

Log in to Issuer Online to interrogate your register in many ways, including running standard reports such as Top 10 - 200 shareholder lists, submitting real-time enquiries such as an issued capital query and reporting by holding range. To ensure privacy, this area of our site has high-level security with password protection.

If you are a current client and do not have a username and password, please contact your relationship/account manager or **email us**.

If you are not a client, **contact us** to learn more about our services.

Copyright © 2005 Computershare Limited. All rights reserved. Reproduction in whole or in part in any form or medium without express written permission of Computershare Limited is prohibited. Please view our Terms and Conditions and Privacy policy

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-22285 CIV GOLD

GUSTAVO A. MORALES,

     Plaintiff,

vs.

CITIGROUP, INC. f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

     Defendant.

_____/

# EXHIBIT "B"

## AFFIDAVIT OF MARCEL FELIPE IN SUPPORT OF PLAINTIFF, GUSTAVO A. MORALES', MEMORANDUM IN SUPPORT OF RESPONSE TO CITIGROUP'S <u>MOTION TO TRANSFER VENUE</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-22285 CIV GOLD

GUSTAVO A. MORALES,

     Plaintiff,

vs.

CITIGROUP, INC. f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

     Defendant.

_____/

## AFFIDAVIT OF MARCEL FELIPE IN SUPPORT OF PLAINTIFF, GUSTAVO A. MORALES', MEMORANDUM IN SUPPORT OF RESPOSNE TO CITIGROUP'S MOTION TO TRANSFER VENUE

I, Marcel Felipe, hereby declare pursuant to 28 U.S.C. § 1746 , as follows:

1. I have reviewed Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue. I make this declaration in support of Plaintiff, Gustavo Morales' Memorandum in Support of Response to Citigroup's Motion to Transfer Venue, and I have personal Knowledge of the facts stated herein.

2. I am attorney admitted to practice law in Florida. It would be a tremendous inconvenience for me to travel to and participate in a lawsuit in New York.

3. In my capacity as an attorney I was engaged to represent Gustavo Morales in an effort to appropriately account for the shares which had been given to him by his

uncle. Additionally, I was engaged to investigate the existence and whereabouts of the shares purchased by Mr. Morales' father.

4. During my involvement, prior to the litigation in this matter, I had various conversations with representatives of Citigroup in an effort to obtain the aforementioned shares.

5. Despite my repeated communication, both oral and written Citibank was unable and unwilling to provide Mr. Morales with the information concerning his shares.

6. Citibank has continually failed to account for the shares which Mr. Morales claimed.

7. Citibank was continually at a loss to explain the number of shares owned by Mr. Morales, the splits of these shares, the dividends paid on these shares and the interest which had accumulated on these shares.

8. During my investigation I have spoken to or learned that the following individuals have knowledge of the issues raised in the Amended Complaint filed in this case.

    a. Ethan Menendez, Citicorp Investment Services, last known address, 7795 West Flagler Street, Suite 46-47, Miami, Florida 33144;

    b. Jodi Lee, Citibank Shareholder Relations, last known address, P.O. Box 43077, Providence, RI 02940-3077,

    c. Joseph Zingalli and Kamran Inayat, Citicorp Data Distribution, Inc., a subsidiary of Citicorp., last known address, P.O. Box 308, Paramus, NJ 07653.

    d.   Employees of the United States Department of the Treasury, Washington, D.C., 20220,

    e.   Oscar P. Leyva, translator, last known address, 6780 Coral Way, Miami, Florida;

    f.   R. Perez, Notary State of Florida, Commission Number CC709826, 8429 N.W. 7th Street, Miami, Florida 33126.

9.   Additionally, I have also investigated Mr. Morales entitlement to these shares as it relates to other heirs and family members.

10. I believe there are a number of witnesses in the Plaintiff's family located in both Miami-Dade County, Florida as well as Cuba that will provide testimony establishing Plaintiff's entitlement.

11. Included in these family members is Marilyn Morales, Plaintiff's daughter who also resides in Miami-Dade County, Florida.

12. To this end there are documents maintained both in Miami and Cuba that will likewise establish Plaintiff's entitlement.

13. Further, prior to my involvement, Plaintiff was represented by other attorney's whom I believe will also have valuable information concerning Mr. Morales claims.

14. These individuals include John G. Loughnane, located in Boston, Massachussettes, and Kieth M. Whipple in Houma, Louisiana.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 20th day of January 2006, in Miami, Florida.

Sworn and subscribed by:

Marcell Felipe, Esq.

State of Florida     )
County of Miami-Dade     )

The foregoing instrument was sworn to and subscribed before me this 20th day of January 2006 by Marcell Felipe, Esq. who is personally know to me.

Natalia Munoz
Notary Public – State of Florida

NATALIA MUNOZ
Notary Public - State of Florida
My Commission Expires Apr 21, 2008
Commission # DD312709
Bonded By National Notary Assn.