UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-22285-CIV-GOLD

GUSTAVO A. MORALES

    Plaintiff,

v.

CITIGROUP f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

    Defendant.
_____/

**DEFENDANT CITIGROUP'S REPLY IN
SUPPORT OF ITS MOTION TO TRANSFER VENUE**

    As shown in Defendant, Citigroup, Inc.'s ("Citi") Motion to Transfer Venue ("Motion"), this action should be transferred to New York for the convenience of the parties and witnesses and in the interests of justice pursuant to 28 U.S.C. 1404(a). Plaintiff's Response to Citigroup's Motion ("Response") discusses a variety of evidence and witnesses located in various jurisdictions, the majority of which are irrelevant to the transfer issue. As such, Plaintiff's Response fails to refute Citi's showing that transfer is warranted. Citi's Motion therefore should be granted.

    The relative convenience of the competing fora in this case only can be determined in light of the factual allegations and Plaintiff's claims. The Court's determination of the transfer issue thus should be made in that context.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

## FACTUAL BACKGROUND

This case stems from Plaintiff's claim of alleged entitlement to certain shares of Citi stock that were issued to his now-deceased uncle in Cuba in the 1930s (the "Uncle's Shares"). Plaintiff claims that Citi should transfer the Uncle's Shares to Plaintiff's name. Plaintiff also claims entitlement to additional shares that allegedly were issued to his now-deceased father in Cuba around about the same time (the "Father's Shares").

In general terms, the dispute arises primarily because Plaintiff has been unable to provide documentation that Citi deems sufficient to establish his claim of ownership to the Uncle's Shares. There is also, however, disagreement between the parties as to the appropriate interest and dividend calculations on the Uncle's Shares, and the very existence of the alleged Father's Shares.

Against this backdrop, Plaintiff has filed a three-count Amended Complaint against Citi.[1] In evaluating the relevance and relative importance of the various witnesses and evidence identified by the parties, it is critical to bear in mind the gravamen of Plaintiff's complaint. The crux of Plaintiff's claim is that Citi has acted in bad faith and with discriminatory intent in response to Plaintiff's inquiries and his attempts to collect what he claims he is due. Plaintiff goes so far as to seek punitive damages based on his allegations that Citi has supposedly stonewalled his attempts to claim the Uncle's and the Father's Shares, interpreted unreasonably the Cuban Assets Control Regulations, and used the passage of time to defeat Plaintiff's claims and to take advantage of the plight of the Cuban people, which Citi adamantly denies.

---

[1] The claims are 1) a declaratory judgment regarding the quantity and value of his alleged stock ownership; 2) conversion of the alleged Father's Shares; and 3) an equitable accounting of the Uncle's Shares.

2

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

From a review of Plaintiff's factual allegations, then, it is clear that this dispute centers around three principal issues: 1) Plaintiff's alleged ownership of the Uncle's and the Father's Shares; 2) the investigation conducted by Citi employees regarding Plaintiff's claims; and 3) Citi's interpretation of, and compliance with, the Cuban Assets Control Regulations. The vast majority of the witnesses, documents and other sources of proof **relevant to these issues** are located in the New York area.

## ARGUMENT

Initially, Plaintiff overstates the showing required to warrant transfer pursuant to 28 U.S.C. 1404(a). Plaintiff relies on Eye Care International v. Underhill, 119 F. Supp. 2d 1313 (M.D. Fla 2000), for the proposition that a defendant seeking transfer must make a substantial showing and that, unless the balance of factors strongly favors defendant, the plaintiff's choice of forum rarely will be disturbed. Resp., p. 5-6. The Eye Care International standard, however, is not controlling here.

The standard set forth in Eye Care International is based upon the erroneous premise that § 1404(a) "is the statutory codification of the common law doctrine of *forum non conveniens*." Id. at 1317. The United States Supreme Court repeatedly has acknowledged, however, that § 1404(a) is a **revision** and **not a codification** of the common law *forum non conveniens* doctrine, and permits **transfer** upon a lesser showing of inconvenience than was previously required for dismissal on grounds of *forum non conveniens*. Piper Aircraft v. Reyno, 454 U.S. 252, 253 (1981) (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)).

Citi's showing of inconvenience meets the statutory standard.

3

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

1. **Plaintiff's Choice of Forum Should Enjoy Little Weight Because the Operative Events Did Not Take Place in This District**

Plaintiff argues that his choice of forum should control because, in its Motion, Citi has "chosen to ignore" that: a) the purchase of stock occurred in Havana; b) the "damage" was allegedly inflicted upon Plaintiff in Miami; c) the demands by Morales have been made in Miami; and d) the evidence concerning ownership will be derived from Miami and Havana. Resp., p. 6.

Simply stated, Citi's Motion to Transfer, in fact, does address all of these points. First, Citi's Motion explicitly acknowledges that events occurred in Cuba and that documents may exist in Cuba. Indeed, it explains that the occurrence of events in Cuba and existence of evidence in Cuba actually *support* its request for transfer because they demonstrate that this case has little, if any, connection to Florida. Motion, p. 8, 11-13.

Next, Citi's Motion addresses the implications of Plaintiff's conclusory assertion that the "damage" was inflicted in Miami, as well as Plaintiff's claim that he made demands from Miami. As Citi's Motion explains, the relevant factor that courts consider is where the operative events underlying the transaction occurred. See Jewelmasters, Inc. v. May Dep't Stores Co., 840 F. Supp. 893, 896 (S.D. Fla. 1993). Here, the dispute in no way centers around Plaintiff's demands, and there was no "damage" inflicted in Florida.[2] It centers, in part, around Citi's *responses* to those demands (responses which were investigated, considered and formulated by Citi personnel

---

[2] As set forth above, the dispute centers around Plaintiff's alleged ownership of the Uncle's and the Father's Shares, Citi's investigation of Plaintiff's claims, and Citi's interpretation of and compliance with the Cuban Assets Control Regulations. And as set forth in Citi's Motion, to the extent that Plaintiff alleges that Citi failed to pay pre-embargo interest or dividends, that alleged breach would have occurred in Cuba, where payment was due, or in New York, where Citi allegedly failed to make payment. Motion, p. 12, n. 9.

4

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

in New York), and around Citi's alleged breaches with regard to the account (alleged breaches that would have occurred in New York or Cuba).

The **factually relevant operative events** in this case thus occurred in New York or Cuba. And as Citi's Motion explains, **deference to the plaintiff's choice of forum is significantly diminished** when the operative facts did not occur within the forum chosen by the plaintiff, **even when the plaintiff is a resident** of the transferor forum. Windmere Corp. v. Remington Prods., Inc., 627 F. Supp. 8, 10 (S.D. Fla. 1985); see also Motion, pp. 11-13 (collecting cases).

**2. The Interests and Convenience of the Parties Favors Transfer to New York**

Citi has shown that the interests and convenience of the parties favors transfer to New York. Specifically, Citi's Motion establishes that key third-party witnesses that are beyond this Court's subpoena powers exist in New Jersey,[3] and that Citi will incur substantial expense and hardship if forced to litigate outside of its residence. Motion, p. 13-14.

With regard to Citi's inability to subpoena third-party witnesses, Plaintiff's response is that a) this Court already has jurisdiction and power to compel the attendance of Citi's employees located in New York; b) this Court has jurisdiction to subpoena third-party witnesses located in Florida relied upon by the Plaintiff; and c) that the proposed transferee court is in no better position to compel the attendance of witnesses in Cuba[4] or other states, including those suggested by Citi in New Jersey. Response, p. 8.

---

[3] Plaintiff has responded to Citi's arguments regarding the availability of compulsory process under the factor relating to the convenience of the witnesses. Response, pp. 7-8. Citi believes that this is more appropriately characterized as an interest of the parties and, as such, addresses it here as it did in its original Motion.

[4] Despite conceding that a federal court in New York is on equal footing with this Court with regard to its ability to subpoena witnesses from Cuba, Plaintiff goes on to state that "the closest Federal Court to the country of Cuba would seem to have the most thorough experience in handling the execution process." Response, p. 8. If what Plaintiff means to suggest by "the execution process" is a request for international legal assistance or the issuance of

5

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

None of these arguments refute Citi's showing that transfer is warranted.

Citi never has suggested that there was any need for this or any other Court to compel the attendance of its own employees within its control.[5] The Court thus may disregard the various alleged employees with whom Plaintiff claims to have communicated in its analysis of the availability of compulsory process.[6] The key third-party witnesses that Citi has suggested are outside of this Court's subpoena power are the executives and employees of Computershare, an outsource vendor located in New Jersey. Plaintiff's assertion to the contrary notwithstanding, a federal district court in New York most certainly would be able to compel the attendance of these witnesses at trial under the 100-mile rule, whereas this Court would not.[7]

With regard to witnesses in Cuba or other states, Plaintiff is certainly correct that this Court and a federal court in New York are on equal footing. It is just that this does nothing to advance Plaintiff's position. The relative *inability* of the competing fora to compel the attendance of witnesses renders those witnesses irrelevant to the transfer analysis. See Thermal Technologies, Inc. v. Dade Serv. Corp., 282 F. Supp. 2d 1373, 1378 (S.D. Fla. 2003) (noting that

---

letters rogatory, he certainly has failed to cite any authority for the proposition that physical proximity to a particular country is somehow relevant.

[5] To the contrary, Citi has acknowledged that "all witnesses within Citi's control would be forced to travel to Miami from New York at significant cost to Citi, disrupting work schedules and the operation of Citi's Depositary Receipts department in New York." Motion, p. 13.

[6] For purposes of the compulsory process analysis, Plaintiff identifies a single alleged Citi employee located in Miami, Ethan Menendez. Mr. Menendez happens to work for a Citi affiliate broker-dealer, and is in no way involved in maintenance of records relating to share ownership, stock splits, or dividend or interest credits. Citi therefore does not believe that Mr. Menendez has any knowledge relevant to the facts of this case. Should his testimony become necessary, however, Mr. Menendez is within Citi's control for purposes of procuring his appearance at trial and there would therefore be no need for compulsory process by either the transferee or the transferor court.

[7] With all due candor, Citi simply does not understand the relevance of Plaintiff's statements of fact regarding which federal circuits have appellate jurisdiction over federal district courts in New York and New Jersey, respectively. Response, p. 4. As Plaintiff's own factual statement reflects, Plaintiff seems to understand that the relevant inquiry is whether the non-party witnesses are within **100 miles** of the district court where the case is pending.

6

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

inability to procure the presence of unwilling witnesses is not a factor where the witnesses are not amenable to process in either fora).

Despite the litany of alleged non-party witnesses listed in Plaintiff's Factual Allegations, Plaintiff only identifies a few non-party witnesses located in Florida: Plaintiff's daughter; one of Plaintiff's former attorneys; two translators that translated a combined total of, at most, a few pages of very simple documents;[8] and a notary who notarized one of the translator's certifications.

The relative importance of these witnesses' testimony must be taken into account in conducting the transfer analysis. See McEvily v. Sunbeam-Ostger Co., 878 F. Supp. 337, 345 (D.R.I. 1994) (noting that consideration of the factor relating to the convenience of the witnesses requires consideration of the nature and quality of their testimony in relationship to the issues in the case). Here, there is simply no need for Plaintiff ever to call the translators he has identified, just as there would be no need to call a photographer when introducing a photograph. In the case of the photograph, all that is needed is a witness available to testify that it is a true and accurate representation of the thing depicted. Should a dispute arise here with regard to the proper translation of the very limited documents Plaintiff has identified, the parties simply can engage translators in the New York area to offer their competing opinions. The translators and the notary thus can be dismissed from consideration in this case. In any event, as Citi has communicated to Plaintiff on several occasions in the past, these documents are insufficient to establish his claim of entitlement to the Uncle's Shares.

---

[8] The translated documents at issue consist of a death certificate containing only the most basic information about the deceased, a three-page "Special Power of Attorney," and a one and one-half page "Sworn Statement."

7

That leaves only two non-party witnesses located in Florida identified by the Plaintiff that the Court need consider in conducting the transfer analysis: 1) Plaintiff's daughter; and 2) one of Plaintiff's three former lawyers that have knowledge of Citi's responses to Plaintiff's inquiries about the Shares. Response, pp. 2-3. The first of these two witnesses, Plaintiff's daughter, presumably would travel voluntarily to testify in support of her brother's alleged multi-million dollar claim. See Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F. Supp. 2d 1246, 1266 n.7 (S.D. Fla. 2001). And with regard to the second witness, one of Plaintiff's former lawyers located in Miami, Plaintiff has failed to explain how or why his testimony in Miami is substantively different from or more important than that of Plaintiff's other former lawyers located in Boston and Louisiana such that it can not be effectively presented by way of transcribed or video deposition.

With regard to Citi's showing that the convenience of the *parties* favors transfer to New York because Citi will incur substantial expense and hardship if forced to litigate outside of its residence, Plaintiff's Response focuses on one sentence of dicta regarding the convenience of *witnesses* taken out of context from McEvily. McEvily, however, fully supports Citi's position.[9] The Plaintiff in McEvily was an Illinois resident who filed suit in federal court in Rhode Island. Id., 878 F. Supp. at 341. The defendant was a Delaware corporation that at one time had its operations in Rhode Island, but had since re-located to Florida. Id. At the time of trial, therefore, the defendant's administrative functions, senior officials, management personnel and corporate records were all centralized Florida. Id. The Court concluded that transfer of venue to Florida pursuant to § 1404(a) was warranted, in part, because "transfer of the case to Florida

---

[9] Plaintiff suggests that this case does not stand for the proposition for which Citi has cited it. Respectfully, it appears that it is Plaintiff, not Citi, that has misunderstood the decision. See; infra.

8

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

would minimize disruption of the Company's business," and the convenience of the parties thus favored the defendant on this issue. Id. at 345.

Here, Citi has made the same showing as the defendant in McEvily; that all of its relevant operations, records and senior level personnel are located in the proposed transferee forum. Citi has thus established that the convenience of the parties favors transfer in this case as well.

### 3. The Convenience of the Witnesses Favors Transfer to New York

The convenience of the witnesses is perhaps the most important consideration in the transfer analysis. Moghaddam v. Dunkin Donuts, Inc., No. 02-60045-CIV-ZLOCH, 2002 WL 190724, at *3 (S.D. Fla. Aug. 13, 2002). For purposes of this analysis, however, the Court "dismisses from consideration the convenience of witnesses who are located outside both the current and the transferee forums." Wechsler v. Macke Int'l Trade, Inc., 1999 WL 1261251, * 6 (S.D. N.Y. 1999). The Court thus may dismiss from its consideration the plethora of witnesses Plaintiff identifies who are scattered about in other jurisdictions. See Response, pp. 2-4. The Court should consider, however, the convenience of the various Citi executives and managers based in New York, New York, all of whom are key witnesses in the case.

Despite Plaintiff's assertions to the contrary, the convenience of these defendant-employee witnesses is a relevant factor to be considered in the transfer analysis. Plaintiff highlights one sentence from McEvily wherein the court noted in passing that defendant-employee witnesses cannot be considered to be inconvenienced *simply because trial in another forum would interfere with the performance of their duties.* McEvily, 878 F. Supp. at 346. What Plaintiff omits, however, is that the court goes on to note that such witnesses "would clearly be personally inconvenienced by having to interrupt their lives to travel" and concluded that it

9

would be "far more convenient to [them] and far less costly [to the defendant]" if trial proceeded in the jurisdiction where the defendant's operations were headquartered. Id.

Just as in McEvily, Citi's employees would be personally inconvenienced by having to travel to Florida. The convenience of the witnesses thus favors transfer to New York. See also Moghaddam, 2002 WL 1940724, at *4.

### 4. The Location of the Physical Evidence Favors Transfer to New York

Finally, Citi's Motion establishes that the relevant documents in Citi's possession relating to this case are located primarily in New York. Plaintiff's response to this showing is that a) he is "perplexed" by the suggestion that this case involves substantial document discovery, because virtually all the documentary evidence at issue is a matter of public record; and b) the documents Citi "suggests are so voluminous are actually kept in New Jersey, not New York . . . [and] can likely be accessed in any state of the Union so long as you have the appropriate password."[10] Response, pp. 9-10.

With regard to the potential need for substantial document discovery, Citi submits that Plaintiff's Response only highlights the need for the Court to consider the transfer issue against the backdrop of Plaintiff's factual allegations and his substantive claims. Plaintiff has sued Citi **for an accounting** in this case. In support of this claim, Plaintiff has alleged that "the determination of [the] adequate number of shares and valuation of these shares over the protracted life of the shares requires review of financial data from complicated accounts and involve complex transactions." Compl., ¶ 47.

---

[10] This latter reference is, of course, to documents maintained by Computershare, which, as set forth in Citi's Motion, is an outsource vendor that has been retained to process transactions as Citi's transfer agent since 1999.

10

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

As noted in Citi's Motion, it thus appears (to Citi at least) that Plaintiff is suggesting some need to review Citi's internal records spanning more than 70 years in order to determine the quantity and value of the alleged Shares. If Plaintiff's position is now that the information needed to determine the quantity and value the Shares (including interest, dividends and stock splits) are a matter of public record, than perhaps Plaintiff is correct that there is no need to comb through antiquated and scattered records. There is then also no need for an accounting, and Plaintiff presumably will be dismissing this claim. Citi believes that is unlikely.

As for Plaintiff's observation that Computershare's files are available on-line anywhere in the nation, Citi never claimed otherwise. Citi's point with regard to Computershare was not that it had to transport its files to Florida; it was, rather, that Computershare's senior executives with knowledge of relevant facts were outside this Court's subpoena power. Motion, pp. 8, 15-16.

In any event, the ability to access Computershare's files on-line does not obviate the need to transport records in this case.[11] The facts of this case date back to the 1930s. Computershare, however, only has acted as Citi's transfer agent since 1999. Moreover, Computershare does not maintain all of the records relevant to Plaintiff's claims. Indeed, Computershare only maintains history detail on certificate transactions from April 11, 1970 onward. This is the date when Citi's records were first automated. These automated records were later converted to Computershare. Information prior to April 11, 1970, however, was converted as a single balance

---

[11] With regard to Plaintiff's need to transport documents allegedly maintained in Florida relevant to his claim of entitlement, which is only one issue in the case, Citi again notes that these documents consist of a simplistic death certificate, a three-page "Special Power of Attorney," and a one and one-half page "Sworn Statement." Again, Citi has repeatedly advised Plaintiff that these documents are insufficient to establish his entitlement to the Shares.

11

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

with no underlying detail. All of the detail transaction history prior to this date, therefore, and all records relating to accounts closed prior to this date, are only available on Citi's manual records in New York.

## 5. Other Factors Favor Transfer to New York

Finally, as set forth in Citi's Motion, yet another factor that bears on the propriety of transfer is the public interest in having local controversies decided in the places where they arose, and that here New York has a heightened interest in resolving this dispute in light of the fact that this case involves claims regarding securities and transfer agency. Plaintiff has not responded to this point and thus presumably concedes that New York has a heightened interest in this case.

With regard to Citi's assertion that transfer will promote a fair trial, Citi feels compelled to explicitly re-iterate what it believes was its clearly stated position in light of Plaintiff's Response. Citi has no doubts regarding the ability of a South Florida jury pool to resolve a case on the merits. What Citi takes issue with is Plaintiff's suggestion that this case "will be tried on its merits and not on rhetoric." Response, p. 11. As set forth both in Citi's Motion and as noted above, Plaintiff's Amended Complaint is peppered with scandalous and inflammatory allegations. Motion, p. 17, n. 11; see also Compl., ¶ 27.[12] These are obviously a preview of the rhetoric that Plaintiff's case has in store, and transfer to New York will thus promote a fair trial **in light of the theory Plaintiff has chosen for his case.**

---

[12] Characterizing Citi's position toward Cubans in general as "immoral" and exploitive of "the human suffering of a nation,"

12

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

## CONCLUSION

Based on the foregoing, Citi respectfully requests that this Court enter an order transferring this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Dated: February 10, 2006.

Respectfully submitted,

/s/ Elena M. Marlow
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
José I. Astigarraga, Edward M. Mullins & Elena M. Marlow
Fla. Bar No. 263508, 863920 & 139858
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel:(305) 372-8282
Fax:(305) 372-8202
E-mail: emarlow@astidavis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to **Omar Ortega, Esq.**, Dorta & Ortega, P.A., 2222 Ponce de Leon Blvd., Suite 306, Coral Gables, FL 33134 this 10th day of February, 2006.

/s/ Elena M. Marlow
Elena M. Marlow

F:\WDOX\CLIENTS\10016\5002\00052677.DOC

13