UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-22285-CIV-GOLD

JUSTA C. MORALES, as personal
representative of the estate of
GUSTAVO A. MORALES

      Plaintiff,

v.

CITIGROUP f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

      Defendant.
_____/

## DECLARATION OF PETER PELLEGRINE

I, Peter Pellegrine, hereby declare pursuant to 28 U.S.C. § 1746, as follows:

1.     I have reviewed the Amended Complaint in the above-captioned matter, as well as Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue and its Supplemental Memorandum. I make this declaration in support of Citigroup's Motion to Transfer Venue, and have personal knowledge of the facts stated herein.

2.     Citigroup, Inc. is a Delaware corporation, with its principal place of business in New York, New York.[1] Citi's files and records relating to this matter are maintained in the New York area.

3.     Prior to filing this lawsuit, the former Plaintiff in this matter, Mr. Morales, contacted Citi regarding certain shares of stock that he claimed were owned by his

---

[1] Citigroup is a holding company, and the parent of various affiliated entities. I refer to these collective entities simply as "Citi" in this declaration.

1

**EXHIBIT D**

deceased uncle and deceased father. Mr. Morales submitted limited documentation to Citi in support of this claim, including copies of various original share certificates, a document from the United States Treasury Department, and copies of two documents that purport to be a Cuban "Sworn Statement and Death Certificate" and a "Special Power of Attorney."

4. In response, Citi investigated Mr. Morales' claims in New York, searched its records in New York, and found evidence of the purchase of his uncle's shares. Citi also investigated Mr. Morales' claims and searched its records in New York with regard to his claim that his deceased father also owned shares of stock, but its records show that no such shares exist.

5. Since the early 1960s, Citi has maintained centralized records regarding all "blocked" Cuban assets in its possession. These records relating to stocks, securities, and transfers of funds in "blocked accounts" are maintained in New York.

6. In the 1930s, when Mr. Morales claimed his uncle and father purchased their stock, Citi (then the National City Bank of New York) acted as its own transfer agent and issued the alleged stock certificates in New York. Since then, all interest and dividends allegedly owing were generated in New York, and any new shares resulting from stock splits or dividend bonuses were issued and held by the relevant entity's transfer agent in New York.

7. Since 1999, Computershare, an outsource vendor, has been retained to process transactions as Citi's transfer agent. In this capacity, Computershare is responsible for complying with all SEC requirements on Citi's behalf. These responsibilities include maintaining all relevant records, including master files and copies of all investigations.

2

Computershare is also responsible for meeting all SEC requirements with regard to retention and processing standards.

8. Citi's Computershare account is administered out of Computershare's offices in Jersey City, New Jersey, and individuals with knowledge of facts relevant to this case are located there. For example, John Gaffney, Computershare's Senior Account Manager responsible for Citi's account and the Computershare employee with individual with the most knowledge regarding Computershare's investigation and actions in this matter, is based in Computershare's Jersey City office. Jersey City is directly across from and within daily commuting distance from lower Manhattan, New York.

9. Citi's Depositary Receipts Department is responsible for its file maintenance and retention policies with respect to historical records of share ownership in Citi and its predecessors. It is also responsible for investigating Mr. Morales' claim of entitlement to Citi stock, and for the interest and dividend calculations on shareholder accounts, including "blocked" Cuban national shareholder accounts. There are approximately 25 current employees in Citi's Depositary Receipts Department, with their offices located in New York. Many of these employees have knowledge of facts relevant to this case.

10. I am a Senior Vice President in Depositary Receipts Operations and Agency and Trust Operations. In this capacity, I manage both Depositary Receipts Operations and Agency and Trust Operations, with a combined staff of 51 persons. I am responsible for overseeing all aspects of the processing and controls for issuance and cancellation of American depositary receipts, dividends and tax reclamation, bond issuance/transfer payments, vault and window, escrow processing, customer service and vendor management.

3

11. Douglas Reed is a Vice-President, who works in the Depositary Receipts and Agency and Trust Operations areas. He manages various operational units, including transfer, reconciliations, window and vault, customer service and vendor management.

12. Clifford Kendelhardt is a Vice President in the Depositary Receipts and Account Management. He is responsible for the administration of all U.S. accounts for these departments. Mr. Kendelhardt has been involved in this aspect of Citi's business for over 35 years, including 24 years in operations.

13. Messers. Reed, Kendelhardt and I all have personal knowledge regarding the facts of this case. For example, we have knowledge of issues such as whether Citi in fact has any records relating to this case, the steps Citi has taken to investigate the Plaintiff's claims, Citi's conclusions regarding the sufficiency of the documentation Plaintiff submitted in support of his claims, and how Citi calculated the interest and dividends due on the stocks.

14. Given our positions and responsibilities, it would be disruptive to Citi's operations in New York for Mr. Reed and I to travel to Florida for this case. In addition, Mr. Kendelhardt will be retiring from Citi on April 30th, 2007 and, upon information and belief, will be remaining in the New York area.

15. I have recently learned Plaintiff has identified Jodi Lee as a Citi employee located in Providence, Rhode Island with relevant knowledge that Plaintiff intends to call as its own witness. Ms. Lee is not now and has never been a Citi employee. Ms. Lee was a Computershare employee. In that capacity, she issued limited, ministerial communications on Citi's behalf in connection with the investigations that were

4

conducted this matter. Ms. Lee no longer works for Computershare. She left the company several years ago, and I have no information regarding her current whereabouts.

16. I have also recently learned that Plaintiff has identified Joseph Zingalli as a Citi employee located in Paramus, New Jersey with relevant knowledge that Plaintiff intends to call as its own witness. Mr. Zingalli is now located in Harrison, New York, 30 miles outside of New York City. Mr. Zingalli had very limited involvement in this matter and has no direct knowledge of the facts of this case. Mr. Zingalli simply performed the ministerial function of communicating information that he would have received from either Messers. Reed or Kendelhardt, the two Citi employees other than myself with the most knowledge regarding the facts of this case.

17. Finally, I have also recently learned that Plaintiff has identified Kamran Inayat as a Citi employee located in Paramus, New Jersey with relevant knowledge that Plaintiff intends to call as its own witness. Mr. Inayat is now located in Washington, D.C. Mr. Inayat's also had an extremely limited role in this matter and has no direct knowledge of the facts of this case. During the relevant time, Mr. Inayat was Mr. Zingalli's supervisor, and was simply copied with the routine communications that Mr. Zingalli issued as a ministerial function as described above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25 day of, in April 2007.

_____
Peter Pellegrine

F:\WDOX\CLIENTS\10016\5002\00052048.DOC