UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-22285-CIV-GOLD

JUSTA C. MORALES, as personal
representative of the estate of
GUSTAVO A. MORALES

    Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

    Defendant.
_____/

### DEFENDANT CITIGROUP'S SUPPLEMENTAL
### REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

Pursuant to this Court's Order entered June 18, 2007, (DE 31), Defendant, Citigroup, Inc. ("Citi"), submits this Supplemental Reply in further support of its Motion to Transfer Venue.[1]

### SUMMARY OF THE ISSUES

Citi seeks transfer to the Southern District of New York for the convenience of the parties and the witnesses and in the interests of justice, pursuant to 28 U.S.C. §1404(a). The legal standard for a motion to transfer, as well as the facts and procedural history of this case, are set forth fully in Citi's filings to date.[2] After all the parties briefing, the true issue is the following: Does the convenience of the parties and witnesses, as well as the interests of justice, warrant

---

[1] This Court's Order Staying and Administratively Closing Case (DE 20) and its Order Re-Opening and Substituting Party (DE 23) make clear that the parties' supplemental filings are supplemental material to be considered in addition to the parties' original filings on the motion to transfer. Citi incorporates by reference its arguments made and evidence submitted in its previous filings.

[2] Citi's previous filings consist of Defendant Citigroup's Memorandum in Support of Motion to Transfer Venue ("Citi's Motion to Transfer")(DE 11); Citi's Reply in Support of its Motion to Transfer Venue (Citi's Reply")(DE 17); and Citi's Supplemental Memorandum in Support of its Motion to Transfer Venue (Citi's Supplemental Memo")(DE 27).

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

transfer to the Southern District of New York? The answer is a resounding yes.

With regard to the convenience of the parties and witnesses, Citi specifically has identified numerous highly relevant witnesses in the New York area with *personal knowledge* of the facts at issue, and described the nature of their testimony. Those witnesses include important Citi personnel (vice-presidents, assistant general counsel, and sanctions officers) whose work schedules will be disrupted by travel to Florida. They also include third-party witnesses beyond the subpoena power of this Court, but within the subpoena of the Southern District of New York. Citi has further established that, to the extent that dated or voluminous documentary evidence exists in New York, much of that evidence it is not in any readily accessible or transportable electronic format.

For her part, Plaintiff is the personal representative of the original plaintiff and thus has no personal knowledge of the facts of this case. She has identified, at best, 1 *arguably relevant* witness who actually resides in this district. None of her supposed key witnesses are located anywhere near the Southern District of Florida. They are, rather, scattered about the country. And of those, two are the original, deceased plaintiff's son and daughter (living in Minneapolis and Boston, respectively), who are willing to travel voluntarily to testify in this case. Moreover, Plaintiff has no documents to speak of, so transfer of this action to New York will not pose any additional burden to her in that regard.

With regard to the interests of justice, consideration of those factors also support transfer. Plaintiff has not, and cannot, establish that transfer to New York will significantly increase costs such that she would no longer be able to fund this litigation. Indeed, the undeniable truth is that her counsel will have to travel extensively to depose witnesses in New York and other parts of the country anyway, regardless of where this case is tried. Moreover, factors of public interest also support transfer, as there is no "local controversy" here. Simply stated, this disputes has no connection to Florida other than the fact that the original plaintiff in this case (a former Cuban national who claims entitlement to certain shares of stock in a New York financial institution allegedly purchased in Cuba in the 1930s) resided here prior to his passing. This dispute is thus grounded in New York and Cuba, not Florida.

Citi's motion should be granted.

2

## ARGUMENT

### Plaintiff's Choice of Forum

Plaintiff's most recent filing[3] begins with yet another recitation of legal standards purportedly governing her choice of forum, and she again overstates those standards. Indeed, her choice of forum warrants the most minimal deference in this case.

Plaintiff cites Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), for the proposition that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[4] She goes on to argue that this consideration is "especially significant when a motion to transfer is simply an attempt to shift the inconvenience from one party to the other."[5] She thus implies that there is some baseline legal standard of heightened deference to her choice of forum in this case. She is wrong. Indeed, her argument borders on misleading.

First, Gulf Oil was a *forum non conveniens* case. As Citi repeatedly has noted (because Plaintiff has continued to cite *forum non conveniens* cases), 28 U.S.C. 1404(a) is not a codification of the doctrine of *forum non conveniens*,[6] but rather a statutory mechanism permitting transfer to another federal district upon a lesser showing of inconvenience.[7] Under § 1404(a), "the Court does not afford near-controlling weight to plaintiff's choice of forum as was done under the old *forum non conveniens* doctrine." First Nat'l Bank v. White, 420 F. Supp. 1331, 1337 (D. Minn. 1976) (emphasis added).[8] She also cites cases for the proposition that her choice of forum is "especially significant when a motion to transfer is simply an attempt to shift the inconvenience from one party to the other."[9] Her cases, however, have little to do with choice of forum and stand, at best, for the general proposition that a motion to transfer should not result in a mere shifting of inconveniences.[10] Citi has no quarrel with that general proposition. It is just that it simply does not apply in this case.

---

[3] Plaintiff's Response to Defendant's [sic] Citigroup's Supplemental Memorandum in Support of its Motion to Transfer Venue (hereinafter "Plaintiff's Supplemental Response")
[4] Plaintiff's Supplemental Response at 2.
[5] Id. at 2-3.
[6] Citi's Motion to Transfer at 9 – 10; Citi's Reply at 3; Citi's Supplemental Memo, p. 3.
[7] Citi's Motion to Transfer at . 9 – 10; Citi's Reply at 3; Citi's Supplemental Memo, p. 3.
[8] *See also* Citi's Motion to Transfer at 11 – 12; Citi's Supplemental Memo, p. 3 – 4.
[9] Plaintiff's Supplemental Response, pp. 2 -3.
[10] *See* Terra International Inc. v. Mississippi Chem. Corp., 119 F. 3d 688, 696 (8th Cir. 1997) and Southern Investors II v. Commuter Aircraft Corp., 520 F. Supp. 212, 219 (M.D. La. 1981).

3

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

More importantly, Plaintiff completely ignores the fact that the already-lessened deference that would have been afforded to the original, deceased plaintiff's choice of forum is further diminished in this case because she is a *representative plaintiff*, not a party to the litigation, and she has no personal knowledge of the facts of this case.[11]

**Third-Party Witnesses**

With regard to this Court's ability to subpoena third-party witnesses, Plaintiff argues that Citi has "failed to take into consideration those witnesses' willingness to travel to South Florida or the possibility of obtaining witness testimony by depositions."[12] Plaintiff's response only supports transfer.

The significance of the reach of this Court's subpoena power centers around two broad categories of third-party witnesses: the plaintiff's three children (Marilyn Morales, Gustav Morales, and Alina Tachara, located in Miami, Minneapolis and Boston, respectively); and key third-party Citi witnesses located in the New York area.[13]

With respect to Plaintiff's supposed key third-party witnesses, Plaintiff now has confirmed that the original plaintiff's son (Gustav Morales, living in Minneapolis) and one of his daughters (Alina Tachara, living in Boston) may in fact have some relevant testimony to offer.[14] These two witnesses are willing to travel voluntarily in support of this claim that is now being prosecuted by their father's estate.[15] Plaintiff thus can secure her third-party witnesses *without* a subpoena. The same cannot be said for Citi. The case therefore should be transferred to the Southern

---

[11] *See* Citi's Supplemental Memo, p. 8, citing Roy v. Alliance Capital Mgt., L.P., 2002 WL 32657085 *3 (M.D. Fla. 2002) (presence of representative plaintiff "highly unlikely [to] 'help to make whatever case can be made.'"); Gold v. Scurlock, 290 F. Supp. 926, 928-29 (S.D.N.Y. 1968) ("[Plaintiff's] choice of forum is a less significant factor [because] the plaintiff is personally not actually a party"); Newfield v. Nicholson File Co., 210 F. Supp. 796, 797-98 (E.D. Pa. 1962) (plaintiff's choice of forum due less deference as plaintiff is suing in representative capacity), and discussion therein.

[12] Plaintiff's Supplemental Response, p. 3

[13] As set forth in Citi's Supplemental Memo, one of Citi's third-party witnesses is Cliff Kendelhardt, who retired from Citi on April 30, 2007. As indicated in Citi's Supplemental Memo, Mr. Kendelhardt currently remains in the New York area. Citi has since learned, however, that Mr. Kendelhardt's current plans are to eventually re-locate to St. Augustine, Florida, where he would still be beyond the subpoena power of this Court (St. Augustine is approximately 315 miles form Miami and travel between the two locations would involve a car journey of close to 4 hours).

[14] Plaintiff has confirmed that both Mr. Morales and Ms. Tachara had, as Citi suspected, some level of involvement in their father's efforts to have the shares at issue transferred to his name. Plaintiff's Supplemental Response, p. 4.

[15] *See*, Plaintiff's Supplemental Response p. 4. It should be noted that it would seem more convenient for Ms. Tachara to travel to New York from Boston than to travel to Miami.

4

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

CASE NO. 05-22285-CIV-GOLD

District of New York, where Citi can secure the testimony of key third-party witnesses *with* a subpoena.[16]

**The Use of Deposition Testimony**

Plaintiff claims Citi fails to consider "the possibility of obtaining witness testimony by depositions."[17] Plaintiff, however, never comes to any conclusion regarding what the result of such an analysis would be. That is because, if this case were to stay here, many witnesses would appear by deposition at trial than if it was transferred to New York. And that supports transfer.

While it is true that, under certain circumstances, deposition testimony of witnesses who are outside of the subpoena power of the Court can be introduced at trial,[18] "[d]epositions, even when videotaped, are no substitute for live trial." In re Eastern Dist. Repetitive Stress Injury Litigation, 850 F. Supp. 188, 194 (E.D. N.Y. 1994). As such, transfer is proper in order to minimize the use of deposition testimony at trial. See Utley v. North American Van Lines, Inc., 2002 WL 31431482 *3 (S.D. Ind. 2002) (granting transfer where most of defendant's key third-party witnesses resided in transferee forum; while witnesses for plaintiff, who was deceased and therefore represented by his estate, consisted of most family and friends, testimony from whom the Court doubted as being particularly relevant, and noting that "[t]he law is clear that 'whenever possible a court should facilitate the live presence of material nonparty witnesses'. . . This view is confirmed by the court's experience that litigators strive to present critical witnesses "live" before juries") (citations omitted); Lever Bros. Co. v. Procter & Gamble Co., 23 F. Supp. 2d 208, 211 (D. Conn. 1998) (granting transfer and stating that "[d]ue to the preference for having live witnesses testify versus reading deposition testimony into the record or using videotaped deposition testimony, we find the convenience factors favor Ohio"); Leinberger v. Webster, 66 F.R.D. 28, 34 (E.D.N.Y. 1975) (granting transfer and stating that the convenience of material witnesses is an important factor, particularly when they "are not subject to the subpoena

---

[16] And, there are other third-party witnesses of varying importance located in other jurisdictions. As illustrated in Citi's Witness Chart, on balance, the location of all third-party witnesses mitigates in favor of transfer to the Southern District of New York. *See,* Citi's Supplemental Memo, pp. 12 – 19 (Witness Chart).

[17] *See* Plaintiff's Supplemental Response, p. 3.

[18] Fed. R. Civ. P. 32(a)(4)(B),(D) ("*Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition; (D) that the party offering the deposition could not procure the witnesses attendance by subpoena.").

5

Astigarraga Davis Mullins & Grossman, P.A.

Astigarraga Davis Mullins & Grossman, P.A.

power of the forum court, necessitating the introduction of crucial testimony via depositions rather than through the preferred method of live witnesses").

**Location of Documents**

Plaintiff asserts in conclusory fashion that, "given accessibility to documents via electronic mail and facsimile as well as several forms of transportation, [the location of documents in support of *either party's case* is] not entitled to great weight."[19] Ironically, Plaintiff argues elsewhere that this case should *remain* in South Florida because the "costs of transferring documents to New York, among other things, [would be substantial]."[20]

In the first instance, even with the advent of modern technology, cases are still transferred to districts where, among other things, the majority of the *relevant* documents are located. See McNair v. Monsanto Co., 279 F.Supp.2d 1290, 1312 (M.D. Ga. 2003) (granting transfer and court observing that plaintiffs had essentially completed their light document production; and that despite technological advances such as photocopying, where defendants' documents regarding development of product and reports of tests conducted in other states were located in transferee forum, this factor weighed in defendants' favor); see also Ramsey v. Fox News Network, LLC, 323 F.Supp. 2d 1352, 1357 (N.D. Ga. 2004) (transferring case to district where defendant's operations were headquartered and operative events took place and where, consequently, "significant documentary evidence, *including . . . . pertinent documents maintained by non-parties*" were maintained) (emphasis added).

More important, Plaintiff's sound-bite quotations regarding the various factors to be considered on a motion to transfer do nothing to advance the analysis: it is the *application* of the principles to the *facts* of the case that guide the inquiry. Here, the *facts* regarding the location, accessibility and ease of transport of the documents heavily favors New York. Citi has established that Plaintiff's case, for her part, is not document intensive insofar as she apparently possesses approximately ten (10) pages of purported Cuban documents and perhaps some limited correspondence exchanged with Citi over the years.[21] Plaintiff has not taken issue with this contention. Citi's case, on the other hand, is potentially document-intensive and, more

---

[19] Plaintiff's Supplemental Response, p. 5.
[20] Plaintiff's Supplemental Response, p. 5.
[21] Citi's Motion to Transfer, p. 16; Citi's Reply, p. 11, n. 11; Citi's Supplemental Memo, p. 4.

6

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

importantly, relevant documents that do exist are either maintained by non-parties or are not easily accessible due to their age and the corresponding manner in which they are originally retained.[22] Application of this factor supports transfer to New York.

**Disruption of Citi's Operations**

Plaintiff states in summary fashion that potential the disruption to Citi's operations from having its witnesses travel to Florida "has been deemed insufficient to warrant transfer of venue where litigating in an alternate forum would be deemed a financial hardship on the Plaintiff."[23] The propriety of considering the relevant wealth of the parties as a factor in the transfer analysis is treated infra. For purposes of this section, suffice it to say that Plaintiff's argument concedes that the disruption to the defendant's operations is in fact a legitimate factor in the transfer analysis, as illustrated by the authorities Citi has cited wherein transfer was granted to the defendant corporation's home district.[24]

**Judicial Economy**

Plaintiff asserts that the interests of judicial economy will be served because this Court is "already aware of all relevant factors and of the background of the case."[25] She goes on to note that South Florida is the deceased plaintiff's home, and that she "wishes to continue litigation here."[26] Again, these arguments fail.

Nothing of note has occurred in this case other than this motion to transfer. Any court adjudicating a motion to transfer obviously must familiarize itself somewhat with the facts of the case. If that resulting familiarity were a basis to deny the motion on the grounds of judicial economy, then no case would ever be transferred. Citi submits that the Court's labor to date has been focused on the transfer inquiry itself, and the Court has not begun grappling with the

---

[22] Citi's Reply, pp. 10 – 12 (explaining, *inter alia*, that manual records dating back to the 1930s are maintained in New York).
[23] Plaintiff's Supplemental Response, p. 4.
[24] McEvily v. Sunbeam-Ostger Co., 878 F. Supp. 337, 344 (D.R.I. 1994)(holding that transfer warranted to defendant corporation's home district when trial in foreign district would disrupt work schedules of witness-employees); Transcontinental Serv. Corp. v. True Temper Corp., 319 F. Supp. 920, 921-22 (S.D.N.Y. 1970) (transfer warranted where, *inter alia*, all of defendants' relevant files and documents were located in transferee district, employees of defendant most familiar with situation resided in district); *see also* Ramsey v. Fox News Network, LLC 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004) (transferring venue in defamation suit filed by parents of JonBenet Ramsey against Fox News to Colorado, where key Fox News witnesses were located).
[25] Plaintiff's Supplemental Response, p. 5.
[26] Plaintiff's Supplemental Response, p. 5.

7

Astigarraga Davis Mullins & Grossman, P.A.

Astigarraga Davis Mullins & Grossman, P.A.

substantive legal issues implicated by Plaintiff's claim (which is basically that the original plaintiff, whose estate she represents, was entitled to have certain shares of Citi stock transferred to his name, and that Citi owes the estate disputed amounts of interest and dividends on those shares of stock).

With regard to Plaintiff's "wish" to continue litigating here, presumably that is wish of any plaintiff faced with a motion to transfer. It is not a factor to be considered.

**The Financial Condition of the Parties**

Plaintiff next asserts financial hardship. Specifically, she claims that trying the case in New York will increase her costs because she will have to "pay for counsel to travel to New York on several occasions [and] pay for the costs of transferring documents to New York, among other things, [and that] she simply does not have the funds to conduct an extensive litigation" there.[27] Plaintiff's argument is wrong if not misleading.

As the record reflects, the vast majority of relevant witnesses who will have to be deposed are located either in New York or in other jurisdictions.[28] Thus, Plaintiff's counsel will be traveling extensively to depose witnesses if this matter remains anyway. Undoubtedly, if Plaintiff retained counsel in New York, less travel will be required given the number of New York witnesses.

The bulk of the travel expenses with respect to this case thus will result from Plaintiff having chosen an inconvenient forum in the first instance and hired a local lawyer for whom the case also will be inconvenient. "Mere inconvenience to counsel is not an appropriate factor to consider on a motion to transfer venue." Matra Et Manurhin v. Int'l Armament Co., 628 F. Supp. 1532, 1535 n. 5 (S.D.N.Y 1986).

With regard to costs associated with her alleged need to transfer documents to New York, Citi has noted immediately that Plaintiff apparently possesses extremely limited documents in support of her case. Plaintiff yet has to deny this contention, much less establish what documents she in fact does possess that would be costly to transfer.

Finally, with regard to her bare assertion that she simply does not have the means to fund

---

[27] Plaintiff's Supplemental Response, p. 5.
[28] See, generally Citi's Supplemental Memo, pp. 12 – 19 (witness chart).

8

extensive litigation, Plaintiff fails to explain how it is that she is funding this litigation here, in which she is claiming "several million dollars"[29] or how her ability to do so would be different if this case were tried in New York. Presumably, Plaintiff has a contingency fee arrangement with her counsel, an arrangement she easily could arrange with a New York lawyer. Plaintiff can decide how she wishes to retain and compensate her counsel, but those considerations are not appropriate for a transfer motion. Matra, 628 F. Supp. at 1535 n. 5.

A claim of financial hardship, like any other factual claim on a motion to transfer venue, must be supported by record evidence. See Vaughn v. Am. Basketball Ass'n, 419 F. Supp. 1274, 1277 (S.D.N.Y. 1976). Here, Plaintiff has provided nothing more than bald assertions regarding her own financial condition, litigation costs if this case were tried in New York, and her ability to otherwise fund this allegedly multi-million dollar litigation. Her contention that Citi's motion should be denied "[o]n this consideration alone" is thus completely without merit.[30] The opposite is true. Consideration of this factor supports the conclusion that Citi's motion should be *granted.* See id. (granting transfer when allegations of financial hardship were neither specific nor supported by record evidence and when his counsel would be receiving a share of any damage award, and stating that these circumstances did not "suggest any inability or likely in ability to prosecute the action. Indeed, the damages claimed by plaintiff, which are in excess of $1 million, suggest the contrary.").

**Public Interest Favors Transfer**

As her last point, Plaintiff claims that of the remaining transfer factors, "the most important would be the advantages of having a local court determine the present question of law."[31] She claims that "[t]o have precedent on this particular issue could be of great importance to the legal jurisprudence in this forum." Without any factual support, she surmises that "[s]urely, there are a number of Cuban-American citizens in the South Florida area" with the same issue of Plaintiff and that "the advantage of having this Court determine the issue of law involved in the present case are not just related to present parties, but to a potentially substantial

---

[29] Amended Complaint for Damages and Jury Trial, ¶ 29.
[30] Plaintiff's Supplemental Response, p. 5–6.
[31] Plaintiff's Supplemental Response, p. 6.

9

number of future cases to be brought before this Court."[32]

Plaintiff's argument misapplies the public interest factor. For this factor, "the Court focuses instead on which forum has a greater stake in the outcome of this litigation." Culp v. Gainsco, 2004 WL 2300426 at *7 (S.D. Fla. 2004). Here, that forum is New York, where the bulk of the activity sued upon – Citibank's supposed wrongful conduct – occurred.

The claim is basically that the original plaintiff in this case, whose estate the Plaintiff represents, was entitled to have certain shares of Citi stock transferred to his name, and that Citi owes the estate disputed amounts of interest and dividends on those shares of stock Nearly all of the underlying operative facts thus took place either in New York or Cuba. The original purchaser of the disputed shares was the uncle of the original plaintiff in this case, a Cuban national who allegedly purchased the stock in Cuba in the 1930s. Citi has its headquarters in New York, New York, where the shares were issued and the disputed interest and dividend payments were made, and where the "blocked" accounts at issue are maintained. It is also where all of the decisions regarding Citi's response to the demands at issue in this case were made.

Now that the original plaintiff in this case, the nephew of the original purchaser, has passed away, this is simply a claim the estate of an alleged "heir" of a Cuban investor in a New York company. The happenstance that the estate is being administered in Florida does make this a "local" controversy. And it certainly does not mean that Florida has a greater interest in the dispute than New York, or even that Florida has an interest at all. Indeed, Citis' actions in New York and its interpretation of federal law are what is truly at are at issue in this case and, as such, the jurors of New York have a local interest in passing judgment on one its largest corporate residents. Furthermore, to the extent that members of the Cuban American community may have an interest in this case, New York and surrounding areas also have very large Cuban populations.[33]

Simply stated, taking into account local interest in a local controversy is a question of whether this is a matter with which we should burden a local jury. Cellularvision Tech. & Tel.,

---

[32] Plaintiff's Supplemental Response, p.6
[33] Indeed, localized disputes between Cuban nationals and New York financial institutions over similar matters have been routinely litigated in New York. See, e.g., Garcia v. Chase Manhattan Bank, N.A., 735 F.2d 645 (2d Cir. 1984); Perez v. Chase Manhatten Bank, N.A., 61 NY2d 460 (2d Cir. 1984).

10

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

L.P. v. Alltel Corp., Slip Copy, 2007 WL 1141491 *6 (S.D. Fla. 2007) (granting transfer and noting that among the factors to be considered under the rubric of public interest include having localized controversies decided at home, and that the burden of jury duty should be imposed only on members of the community where the controversy is localized); Cellularvision Tech. & Tel., L.P. v. Cellco, 2006 WL 2871858 (S.D. Fla. Sept. 12, 2006) (same).

The Plaintiff requests the Court to look beyond the actual parties and facts to this dispute because, she argues, it would be logical for this Court to make legal precedent, presumably, on the Cuban Assets Control Regulations. Yet, the Cuban Assets Control Regulations are a matter of federal law, not state law, and thus there is no benefit to having this Court interpret those regulations as opposed to any other federal district court.

Plaintiff's suggestion that this Court should deny transfer so that it is the Court to interpret federal law is contrary to the notion of the unified federal court system. "Federal courts comprise a single system applying a single body of law and **no litigant has a right to have the interpretation of one federal court rather than that of another determine his case**." H. L. Green Co. v. MacMahon, 312 F. 2d 650, 652-53 (2d Cir. 1962) (affirming transfer on a federal securities claim pursuant to 28 U.S.C. § 1404) (emphasis added). Absent Congressional authority to the contrary (for example, the Federal Circuit with respect to patent law), there simply is no basis for the premise that any particular federal judicial circuit should be accorded preference to "set precedent" or to decide certain federal legal issues. Every district court has the independent obligation to determine and apply federal law. In re Enron Corp. Securities, Derivative & "ERISA" Litig., 2004 WL 1237497 *10 (S.D. Tex. 2004). Indeed, no reason exists to believe that a judge in the Southern District of New York will interpret the applicable federal law with any less accuracy than this Court.

Simply stated, Plaintiff's desire to have a particular federal court interpret federal law is not a factor to be considered on a motion to transfer. But if it were, transfer would still be warranted. That is because Citi's actions in this case implicate broader issues of federal law and government relations. Specifically, a broad panoply of regulations, including the Cuban Asset Control Regulations at issue in this case, are promulgated under the Trading With the Enemy Act, 50 U.S.C. § 1, et. seq.. Current country-specific U.S. sanctions programs imposing

11

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

"blocking" obligations include those directed at Burma, Sudan and Cuba. In the last 10 – 15 years, Citi has had to interpret regulatory sanctions schemes directed at Vietnam, North Korea, Haiti, Libya, Iraq, and the former Republic of Yugoslavia. Indeed, today Citi must comply with a full scope program with regard to Iraq. The federal issues implicated here are thus not uniquely Cuban at all. They are international in the truest sense of the word, and Citi (as well as other major financial institutions located in New York) has to contend with them in New York on an on-going basis. If any jurisdiction has an interest in this federal issue, then it is New York.[34]

## CONCLUSION

This case belongs in New York. For all of the reasons set forth in Citi's filing to date, Citi's Motion to Transfer should be granted.

Respectfully submitted,

/s/ Elena M. Marlow
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
José I. Astigarraga, Edward M. Mullins,
Elena M. Marlow
Fla. Bar No. 263508, 863920, 139858 & 817031
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel:(305) 372-8282
Fax:(305) 372-8202
E-mail: emarlow@astidavis.com

---

[34] *See, e.g.* Smith ex rel.v. Federal Reserve Bank, 346 F.3d 264 (2d Cir. 2003) (addressing issues with respect to blocked assets of Iraq); To v. Bank of N.Y., 101 F.3d 681 (2d Cir. 1996) (addressing plaintiff's claims involving blocked assets in Vietnam, frozen by the Treasury Department's Office of Foreign Asset Control, noting that Southern District of New York was addressing similar claims); Semetex Corp. v. UBAF Arab Am. Bank, 853 F. Supp. 759 (S.D.N.Y. 1994) (addressing blocking order on Iraqi assets). Moreover, the New York federal courts are well versed in addressing issues with respect to the financial transactions with respect to Cuba. Banco Nacional de Cuba v. First Nat'l City Bank of N.Y., 478 F.2d 191 (2d Cir. 1973) (Cuban government's expropriation of New York bank's Cuban property without providing adequate compensation violated international law).

12

CASE NO. 05-22285-CIV-GOLD

CERTIFIFACT OF SERVICE

I HEREBY CERTIFY that on June 26, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to **Omar Ortega, Esq.**, Dorta & Ortega, P.A., 2222 Ponce de Leon Blvd., Suite 306, Coral Gables, FL 33134.

/s/ Elena M. Marlow
Elena M. Marlow