UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 07CV6286 (GRD)

JUSTA C. MORALES, as personal
representative of the ESTATE of
GUSTAVO A. MORALES

    Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

    Defendant;

CITIGROUP, INC. f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

    Counter-plaintiff,

v.

JUSTA C. MORALES, as personal
representative of the ESTATE of
GUSTAVO A. MORALES,
JANE DOES 1 – X, and JOHN DOES 1 - X

    Counter-defendants.

_____/

**COUNTER-PLAINTIFFS CITIGROUP, INC. AND CITIBANK, N.A.'S NOTICE
REGARDING RESTRICTIONS ON UNLICENSED JUDICIAL TRANSFERS OF
BLOCKED PROPERTY OF CUBAN NATIONALS**

Counter-plaintiff/Defendant CITIGROUP, INC. and Counter-plaintiff CITIBANK, N.A.

f/k/a THE NATIONAL CITY BANK OF NEW YORK (collectively "Citi"), pursuant to 31

C.F.R. § 501.605(c), hereby provide this Court with notice of certain restrictions with respect to

the transfer of potentially blocked property set forth in the Cuban Asset Control Regulations, including the prohibition on any unlicensed judicial process with respect to any such blocked property.

A.   **Factual Background**

This case stems from Gustavo Morales'[1] claim of alleged entitlement to certain shares of Citi stock that were issued to his uncle in Cuba in the 1930s (the "Uncle's Shares"), and to additional shares that allegedly were issued to his father in Cuba around about the same time (the "Father's Shares"). Gustavo Morales' uncle and father, both of whom were Cuban nationals, are now deceased. The dispute arises primarily because Plaintiff is required to provide Citi with sufficient documentation to establish Gustavo Morales' claim of ownership to the Uncle's Shares. In addition, there is disagreement between the parties regarding the amount of accrued dividends and interest calculations on the Uncle's Shares. Finally, the parties are in disagreement as to whether the Father's Shares actually exist.

Against this backdrop, Plaintiff has filed a three-count Amended Complaint against Citi. First, Plaintiff seeks declaratory relief in connection with his claim of entitlement to the Uncle's Shares and the disputed amounts of interest and dividends on those shares, claiming that the those shares were purchased in the uncle's name for Gustavo Morales' "benefit." See, e.g., A. Compl., ¶¶ 7, 11, 30-35. Second, Plaintiff asserts a claim for conversion with regard to the Father's Shares, alleging that Gustavo Morales was the "heir and owner" of those shares and that Citi has refused to acknowledge their existence. A. Compl., ¶¶ 8, 10, 36-42 Third, Plaintiff

---

[1] GUSTAVO A. MORALES was the original plaintiff in this action. He since has passed away, and the personal representative of his estate, JUSTA C. MORALES, has been substituted as the party plaintiff in his stead.

2

seeks an equitable accounting to determine the number and value of both the Uncle's and Father's Shares, as well as the amounts of accrued dividends and interest currently being held in an escrow account.

In response to Plaintiff's claims, Citi has counter-claimed for interpleader relief against Plaintiff and Counter-defendants Jane Does 1 – X and John Does 1 – X. Counter-claim, ¶¶ 68, 114-117. The Doe Counter-defendants are likely Cuban nationals residing in Cuba who are heirs to Gustavo Morales' uncle's estate and whose true names are unknown to Citi at this time. Id. ¶ 68. In short, Citi seeks interpleader relief because it is a mere stakeholder and has no interest in the Uncle's Shares or the monies in the escrow account, but it has a legitimate fear that the Doe Counter-Defendants may assert similar claims and that Citi thus is exposed to multiple liability. See id. at 104-116. If the Plaintiff's claims are valid, and she can show that Gustavo Morales was the "heir and owner" of the Uncle's Shares, then there will be no issue with respect to the Doe Counter-defendants.

### B. Restrictions on Transfers Under the Cuban Asset Control Regulations

The Cuban Assets Control Regulations, 31 C.F.R. § 515.201 et. seq., were issued by the U.S. Government in 1963 under the authority of the Trading With the Enemy Act, 50 U.S.C. § 1, et. seq. De Cuellar v. Brady, 881 F.2d 1561, 1562 (11th Cir. 1989). The basic goal of the sanctions is to economically isolate the Cuban government and to deprive it of U.S. dollars and also to retain the "blocked" assets for possible use or vesting to the United States or for negotiations with the Cuban Government. Id. at 1569. The Control Regulations are administered by the United States Treasury Department, through the Office of Foreign Assets

CASE NO.: 07CV6286 (GRD)

Control ("OFAC"), and severe civil and criminal penalties exist for their violation. See, e.g., 31 C.F.R. §515.701.

These Control Regulations impose economic sanctions against Cuba by "blocking" or "freezing" any Cuban assets. See generally 32 C.F.R. § 515.201 et. seq.; Harry L. Clark, Dealing with U.S. Extraterritorial Sanctions & Countermeasures, 25 U. Pa. Int'l Econ. L. 455 (Spring, 2004). Among other things, they contain "blocking" provisions prohibiting all transactions in which Cuba or a Cuban national[2] has "any interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 515.201(a) & (b). Prohibited transactions include transferring blocked property to any person, without a license or authorization from OFAC, including transactions with respect to securities registered or inscribed in the name of a designated national. 31 C.F.R. § 515.201 & 202. "Blocked estates" and "blocked accounts" generally are defined as estates and accounts in which a Cuban national (which includes the decedent in the case of an estate) has an interest. 31 C.F.R. § 515.319 & 327; see also 31 C.F.R. §515.407 (prohibiting various transactions incident to the administration of blocked estates, including distribution of assets to certain beneficiaries).

In sum, significant restrictions exist on the transfer of property belonging to Cuban nationals, including the property belonging to deceased Cuban nationals or their estates. These restrictions apply equally when the attempted transfer or transaction is sought via judicial process. Indeed, the Control Regulations contain specific provisions addressing judicial proceedings with respect to the blocked property of Cuban nationals specifically stating that they

---

[2] The Regulations actually speak in terms of "a foreign country designated under this part, or any national thereof" and then clarify that the designated county is Cuba. 31 C.F.R. § 515.201(a), (b) & (d); see also 31 C.F.R. § 515.305 (defining "designated national" as a national of Cuba).

4

CASE NO.: 07CV6286 (GRD)

do not authorize the "payment or delivery out of a blocked account based upon a judicial proceeding, nor do [they] authorize the enforcement or carrying out of any judgment or decree or order of similar or analogous effect with regard to any property in which a [Cuban] national has an interest." 31 C.F.R. § 515.504(2). The Control Regulations thus require "persons initiating proceedings on behalf or against persons whose property or interests in property are blocked" to notify the adjudicatory body of the restrictions contained in the Control Regulations, including the prohibitions on "unlicensed attachment, judgment, decree . . . or other judicial process with respect to [blocked] property." 31 C.F.R. § 501.605(a) & (c).

### B.  Citi Provides Notice of Potential Implication of the Control Regulations

The Cuban Asset Control Regulations are interpreted broadly to further the purposes of the Control Regulations, and the Treasury Department considers them to ban activity even when only an attenuated connection to the target country exists. Clark, supra at 459-460 (citations omitted). Even without this caveat, the claims at issue here clearly implicate transfers and transactions involving blocked property. As such, Citi hereby notifies the Court of the restrictions with respect to the transfer blocked property set forth in the Control Regulations, including the prohibition on any unlicensed judicial process with respect to any such blocked property, as required by 31 C.F.R. § 501.605(c).

[signature on next page]

5

CASE NO.: 07CV6286 (GRD)

Respectfully submitted,

/s/ Edward M. Mullins
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
José I. Astigarraga, Edward M. Mullins, Elena M. Marlow
Fla. Bar No. 263508, 863920, 139858 & 817031
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel:(305) 372-8282
Fax:(305) 372-8202
E-mail: emarlow@astidavis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 26, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: **Omar Ortega, Esq.**, Dorta & Ortega, P.A., 2222 Ponce de Leon Blvd., Suite 306, Coral Gables, FL 33134.

66626

/s/ Edward M. Mullins
Edward M. Mullins