UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 07CV6286 (GRD)

JUSTA C. MORALES, as personal
representative of the ESTATE of
GUSTAVO A. MORALES

    Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL CITY
BANK OF NEW YORK,

    Defendant;
_____/

CITIGROUP, INC. and CITIBANK, N.A. f/k/a
THE NATIONAL CITY BANK OF NEW YORK,

    Counter-plaintiff,

v.

JUSTA C. MORALES, as personal
representative of the ESTATE of
GUSTAVO A. MORALES,
JANE DOES 1 – X, and JOHN DOES 1 - X

    Counter-defendants.
_____/

**COUNTER-PLAINTIFFS CITIGROUP, INC. AND CITIBANK, N.A.'S MOTION TO
SERVE THEIR COUNTERCLAIM BY PUBLICATION ON COUNTER-DEFENDANTS
JANE DOES I – X AND JOHN DOES I - X
AND ACCOMPANYING MEMORANDUM OF LAW**

Counter-plaintiff/Defendant CITIGROUP, INC. and Counter-plaintiff CITIBANK, N.A.

f/k/a THE NATIONAL CITY BANK OF NEW YORK, pursuant to Federal Rule of Civil

Procedure 4 and 28 U.S.C. § 1655, move to serve by publication their compulsory counterclaim on Counter-defendants, JANE DOES I – X and JOHN DOES I – X (collectively the "Does"). This motion should be granted for the reasons set forth in the accompanying memorandum of law in support.

## MEMORANDUM OF LAW

Plaintiff[1] has sued Citigroup, Inc. claiming that she is the sole rightful owner of certain shares of stock and that she is entitled to disputed amounts of interest and dividends on that stock. Citigroup, Inc. ("Citigroup"), the entity whom Plaintiff has sued, is a holding company which is the parent and affiliate of various entities. Declaration of Rebecca Behr, ¶ 2. Plaintiff alleges that a Cuban national, Jose Domingo Morales Morales, who is the deceased uncle of the original plaintiff, GUSTAVO A. MORALES ("Gustavo Morales"), purchased 50 shares of stock in the 1930s (the "Uncle's Shares") in what was then The National City Bank of New York. A. Compl., ¶ 7, 9. Plaintiff claims that the Uncle's Shares were purchased for the "benefit" of Gustavo Morales, a Cuban American residing in Miami, Florida at the time of his death. Id. The National City Bank of New York, the entity that issued the Uncle's Shares claimed by Plaintiff, is the predecessor of Citibank, N.A. ("Citibank"); Behr Dec., ¶ 4.

In furtherance of her claims of entitlement to the Shares, Plaintiff has pled counts for (1) Declaratory Relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201; (2) Conversion; and (3) Equitable Accounting. A. Compl.

---

[1] The original plaintiff, GUSTAVO A. MORALES, since has died, and the personal representative of his estate, JUSTA C. MORALES, has been substituted as the party plaintiff in his stead. (United States District Court, Southern District of Florida, Case No. 05-22285-CIV-GOLD-TURNOFF, DE 20).

2

In response to Plaintiff's claim that she alone is the rightful owner of the Shares, Citigroup and Citibank have counter-claimed for interpleader relief against Plaintiff and Counter-defendants Jane Does 1 – X and John Does 1 – X. Counter-claim, ¶¶ 68, 114-117; Behr Dec., ¶ 6.

### A.    Citibank and Citigroup's Counterclaim

On August 31, 2007, Citigroup and Citibank (collectively "Citi") filed their counterclaim for interpleader against Plaintiff and Jane Does I – X and John Does I – X. (DE 9). As alleged in the counterclaim, Jane Does I – X and John Does I – X (collectively "Does"), are the potential heirs of Jose Domingo Morales Morales ("Jose Domingo"), who, in turn, Plaintiff claims is the deceased uncle of the original Plaintiff, Gustavo Morales. Counterclaim ¶¶ 68, 94.

As indicated above, the chain of events giving rise to Citi's counterclaim for Interpleader against Plaintiff and the Does originates from the 1930s in Cuba. Id. ¶ 68. In the 1930s, Jose Domingo purchased 50 shares of common stock in the National City Bank of New York, the predecessor to Citibank. Id; Behr Dec., ¶ 5. Jose Domingo, who was a citizen and resident of Cuba, had these share certificates, the Uncle's Shares, issued to him in his name only, at his address in Caibarien, Cuba. Id. ¶ 72. Decades later and sometime after the rise of Fidel Castro in Cuba, it is believed that Jose Domingo, a married man, died in Cuba. Id. ¶ 73.

Although Plaintiff claims that Jose Domingo purchased the Uncle's Shares for the benefit of his nephew, Gustavo Morales, Plaintiff has failed to provide Citi with sufficient legal documentation that would support Plaintiff's claim of his sole legal entitlement to Jose Domingo's Shares. Id. ¶ 103; Behr Dec., ¶ 5.

Notably, Gustavo Morales did provide Citi with a photocopy of a document purported to

3

be the death certificate of Jose Domingo. Id. ¶ 95. Even that document, however, casts a pall over Plaintiff's claims as it appears to have been originally issued on August 13, *2001,* yet gives Jose Domingo's date of death as July 16, *1991*, some ten (10) years prior. Id. ¶ 96.

When faced with the possibility of competing claims from the heirs of Jose Domingo, any number of whom may be entitled to a portion of his estate, Citi must protect itself from liability before it effectuates the transfer of Shares to any claimant. Id. ¶¶ 101, 102.

Citigroup, the entity whom Plaintiff has sued, is a Delaware corporation with its principal place of business in New York, New York. Id. ¶ 65; Behr Dec., ¶ 2. Citibank, the successor to The National City Bank of New York, is a national banking association with its principal place of business in New York, New York. Id. ¶ 66; Behr Dec., ¶ 3.

### B.  The Securities Transfer Association Rules

Citibank's stock is registered and traded on the New York Stock Exchange ("NYSE"). Id. ¶ 88. Citi thus complies with rules that have been promulgated under the aegis of the Securities and Exchange Commission ("SEC") for the transfer of shares traded on the NYSE. Id. ¶ 87. Approved by the SEC, the Securities Transfer Association sets forth requirements that, when met, establish that a particular claimant is entitled to have shares transferred to his or her name when the claimed shares originally were issued to a decedent that is not a U.S. resident, such as the Uncle's Shares at issue here. Id. ¶ 89.

The transfer rules require that a claimant provide, *inter alia*, a certified copy of the death certificate; an affidavit of residence for the decedent; succession papers from the jurisdiction where the estate is being administered; a court certified copy of the decedent's will; an opinion by an attorney licensed to practice in the jurisdiction (here Cuba) that the papers are in order, that

4

all applicable taxes have been paid, that debts of the estate have been paid or are fully secured; and that an endorsement of the stock certificate by the estate representative has been made, as well as other requirements. Id. ¶ 92. None of these documents, which would support Plaintiff's claim of sole legal entitlement to the Shares, has been provided to Citi. Id. ¶ 98.

### C. The Cuban Assets Control Regulations

Furthermore, the Uncle's Shares were issued to Jose Domingo, a Cuban national. Id. ¶ 72. As property belonging to a Cuban national or his estate, the Uncle's Shares are "frozen" and all transactions in connection with the Shares have been "blocked" by the United States through the latter's embargo on Cuba. Id. ¶ 76. Specifically, after Castro and his Communist forces took over Cuba, the United States began a wide-ranging economic embargo against Cuba, which embargo is administered by the Office of Foreign Assets Control ("OFAC"). Id. ¶¶ 74, 75. OFAC has issued a series of rules and regulations that implement the embargo, which are known as the Cuban Assets Control Regulations (the "Regulations"), 31 C.F.R. § 515.201 et seq; Id. ¶ 75.

The Regulations provide that any property that is under the control of any person located within the jurisdiction of the United States, here Citi, and in which any Cuban national holds an interest, here Jose Domingo, is to be maintained in a blocked account. Id. ¶¶ 76-80. Failure by Citi to comply with the Regulations could result in severe civil penalties and even criminal prosecution. Id. ¶¶ 82, 83. Accordingly, since the 1960s, after these rules were promulgated, Citi not only has been prohibited from effectuating the transfer of any property belonging to Jose Domingo, it also has been prohibited from making any dividend payments to him. Instead, all dividends owing on the Uncle's Shares, and accrued interest on the dividends, is maintained in

an escrow account held by Citi in compliance with OFAC. Id. ¶¶ 78-80.

The only way that blocked assets can become unblocked so that transactions, including transfers, are allowed, is if a license is obtained by OFAC that unblocks the asset at issue. Id. ¶¶ 85, 86. Further, whenever there are estate assets of Cuban nationals that are located within the United States, which Jose Domingo's Shares would qualify as, then OFAC sets forth certain requirements that must be met which directly pertain to establishing legal entitlement to such blocked estate assets. Id.

Among other conditions, 31 C.F.R. § 515.522 provides that a putative heir or devisee of a Cuban national must satisfy certain conditions in order to unblock the asset at issue: *inter alia*, the person claiming an interest in the blocked asset must be a permanent resident of the United States provide proof of death of the Cuban national, and provide "proof of heirship, to be established by the decedent's duly executed will certified by a probate court, a court decree determining the heirs – or failing the availability of such documents – copies of certificates establishing the relationship of the heir to the deceased, e.g., birth or marriage certificates."

The documentation that Plaintiff is required to provide to OFAC, if also provided to Citi, could aid Plaintiff in establishing her claim of sole legal entitlement to the Uncle's Shares. However, no such documentation has been provided. Id. ¶¶ 97, 98. Plaintiff's refusal or inability to provide evidence that would support her allegations of entitlement has created further doubt and uncertainty on the part of Citi as to the legitimacy of her claims. Id. ¶¶ 98, 99. Citi, therefore, has filed its counterclaim for Interpleader.

In its Counterclaim, Citi has named Plaintiff and Jane and John Does as Counter-defendants. Jose Domingo was a citizen and resident of Cuba until the time of his death, and he

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

was married. Id. ¶¶ 99-101. It is certainly possible that he had children or other surviving relatives in Cuba, notwithstanding his alleged nephew's domicile in the United States. Id. Accordingly, any number of Jose Domingo's relatives, including Cuban heirs, may be entitled to a portion of his blocked estate.

Citigroup and Citibank's sole interest in asserting the counterclaim is to ensure that they are not subject to multiple claims on the Uncle's Shares.

The names of the prospective Cuban heirs of Jose Domingo are unknown to Citi. Behr Dec., ¶¶ 6-7. As set forth below, pursuant to 28 § U.S.C. 1655 and Federal Rule of Civil Procedure 4, Citi requests that the Court allow Citi to serve the Does by constructive service, permitting Citi to publish an order from this Court notifying the Does of the Counterclaim for interpleader and requiring the Does to appear and plead by a date certain.

## ARGUMENT

28 U.S.C. § 1655, provides, in part:

> In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance (sic) or lien of cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.
>
> Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. **Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.**

"The primary purpose of this section is to permit constructive service of process in actions involving interests in real or personal property located within the district." Miller & Lux

7

Inc. v. Nickel, 149 F. Supp. 463, 465 (N.D. Cal. 1957); see also Greeley v. Lowe, 155 U.S. 58, 74 (1894) (discussing with approval the enactment of the original constructive service statute, the Act of 1875, section 8, which "permit[s] the publication of absent defendants, since the entire object of the section is to call in defendants who cannot be served within the district, by reason of their absence or nonresidence"). "When we consider its [§ 1655] primary purpose and the comprehensive terms in which it is couched, ... [the court] is inclined to think it should receive a liberal construction, with a view to giving effect to the legislative intent." Consolidated Interstate C.M. Co. v. Callahan M. Co., 228 F. 528, 530 (N.D. Ind. 1915).

As the statute provides, a federal district court may order service by publication whenever there is real or personal property located within the district, there is a lien on the property or title to the property is clouded, and it is not practicable to serve any absent defendants, who may have an interest in the property, personally. Accordingly, the federal courts order service by publication after the appropriate showing has been made in a variety of contexts. See, e.g., Rensselaer & Saratoga R. Co. v. Irwin, 252 F. 921, 923 (N.D.N.Y. 1918) (court has jurisdiction to order service by publication on nonresident stockholders in corporate tax lien dispute); Continental Trust Co. v. Shunk Plow Co., 263 F. 873, 875-76 (5th Cir. 1920) (service by publication on nonresident defendants appropriate in proceeding when plaintiff alleged a beneficial interest in a fund located within the district); Porter v. Cooke, 63 F. 2d 637 (5th Cir. 1933) (service by publication on absent defendant proper in suit to enforce equitable lien on real and personal oil and gas properties located within the district).[2]

---

[2] See also McQuillen v. Nat'l Cash Register, 13 F. Supp. 53, 54, 60-61 (D. Md. 1935) (substituted service by publication or notification on absent defendants appropriate in proceeding to quiet title to stock, when court held that situs of shares was where corporation was domiciled); Bede Steam Shipping Co. v. New York Trust Co., 54 F.2d

8

When a claim for interpleader is alleged, substituted service is appropriate for defendants who could not otherwise be served. United States v. Estate of Swan, 441 F. 2d 1082, 1085-86 (5th Cir. 1971) (service by publication in a paper of general circulation proper for absent defendant to interpleader action); Fidelity & Guar. Life Ins. Co. v. Freeman, 94 F. Supp. 2d 689, 691 (D. Md. 2000) (service by publication ordered for defendants in interpleader action when efforts to notify defendants personally were unsuccessful so that further efforts at personal service were futile); A/S Krediit Pank v. Chase Manhattan Bank, 155 F. Supp. 30, 37 (S.D.N.Y. 1957) (interpleader action against, inter alia, "John Doe" foreign defendants wherein court ordered service by publication on unknown "John Doe" defendants).

With regard to the relationship between interpleader actions and 28 U.S.C. § 1655, utilization of which is sometimes necessary to enable the court to grant interpleader relief, the Bache Halsey Court noted:

> 'If parties with claims against the property are permitted to exempt those claims from adjudication in an interpleader action by evading personal service, the basic policies underlying interpleader permitting a stakeholder to avoid multiple liability and a multiplicity of suits are disserviced.' **This policy is particularly cogent here, where Bache, a large brokerage house located in New York, an international center of business and commerce available to parties from around the world, is faced with conflicting claims to assets it holds for foreign citizens.** To deny interpleader relief to such a stakeholder presages a burgeoning problem whereby persons, however widely dispersed in foreign lands, could take advantage of the financial expertise available in New York without protecting the New York financial institutions when disputes arise as to the ownership or assets placed in their charge.

Bache Halsey Stuart Shields Inc. v. Garmaise, 519 F. Supp. 682, 686 (S.D.N.Y. 1981) (citations

---

658 (S.D.N.Y. 1931) (substituted service ordered on absent defendant in suit to foreclose lien on treasury certificates that had been deposited with New York financial institution).

omitted).

Similar to actions for interpleader, which involve questions of legal entitlement to property, the federal statute allowing constructive service properly is invoked when title to corporate stock is at issue and service is not available by ordinary means.[3]

As a prerequisite to invoking the court's jurisdiction pursuant to 28 U.S.C. § 1655, the property or *res* at issue must be located within the district in which the court sits. Spellman v. Sullivan, 43 F. 2d 762, 763- 74 (S.D.N.Y. 1930). For purposes of the constructive service statute, when title to stock is at issue, shares are located where the corporation that issues the shares is domiciled. Jellenik v. Huron Copper Min. Co., 177 U.S. 1, 13 (1900). Following Jellenik's lead, other courts have adopted the reasoning of the Supreme Court regarding the situs of shares for purposes of 28 U.S.C. § 1655.[4]

This is true even if the stock certificates have been seized. Miller v. Kaliwerke Aschersleben Aktien-Geseelschaft, 283 F. 746, 755 (2d Cir. 1922) (citing with approval Jellenik

---

[3] See, e.g., Jellenik v. Huron Copper Min. Co., 177 US 1, 12 (1900) (shares of a corporation are personal property coming within purview of the statute that allows service by publication on absent defendants); Vidal v. South Am. Secur. Co., 276 F. 855, 869 (2d Cir. 1921) ("the securities constitute property within the district within the meaning of section 57 of the Judicial Code ((predecessor of 28 U.S.C. § 1655)); McQuillen v. National Cash Register, 112 F. 2d 877 (4th Cir. 1940) (not error for district court to order substituted service on defendants pursuant to 28 U.S.C. § 1655 because shares of a Maryland corporation are property located within district under meaning of constructive service statute).

[4] See e.g. Vidal v. South Am. Securities Co., 276 F. 855, 868-69 (2d Cir. 1922) ( "an important distinction exists between shares of stock and certificates for the shares, the certificates being mere evidence of title" and determining that Maine corporation with its principal place of business located in the Southern District of New York, where transfer of title to shares also would take place, sufficient to establish that shares were "located" within district for purposes of statute); Norrie v. Lohman, 16 F. 2d 355, 358 (2d Cir. 1926) (situs of shares is state of incorporation and where corporation transacts its business, including directors' meetings and transfer of its shares); Gideon v. Representative Securities Corp., 232 F. 184, 185 (S.D.N.Y. 1916) (citing with approval Jellenik and noting that the Act of 1875 may be employed to serve a nonresident in an action to quiet title to shares issued by a New York corporation); Meyers v. Occidental Oil Corp., 288 F. 997, 1003 (D.C. Del. 1923) ("shares of capital stock of a Delaware corporation are personal property and have their situs in [Delaware] . . . A suit for the cancellation or specific recovery of such stock may be brought in this district and service had under Judicial Code, Sec. 57 . . . on defendants residing elsewhere); Hall v. Gulf South Utilities, 96 F. Supp. 351, 354 (S.D. Miss. 1951) (citing with approval Jellenik and holding that action seeking to remove cloud on title to shares was property "located within district" pursuant to 28 U.S.C. § 1655 where corporation's principal place of business was within district).

and noting: "A share of stock and the certificate of the share are two very different matters. The certificate of stock is not the stock itself, but mere evidence of the stockholder's interest in the corporation. **A seizure of the certificate, which may be in one state or country, is not a seizure of the stock, the situs of which may be in another.** That the situs of the stock is at the domicile of the corporation, and that it makes no difference that the certificate of the stock may physically be elsewhere, is the rule in the federal courts").

Turning to this case, Plaintiff has sued Citi demanding that Citibank Shares that were issued to Jose Domingo be transferred to her name.

As a national banking association with its principal place of business in New York, New York, the Citibank Shares which are the subject of Citi's counterclaim for interpleader constitute property that is located within the Southern District of New York for purposes of 28 U.S.C. § 1655.[5] Jellenik, 177 U.S. at 13 (shares are located wherever company that issued them is domiciled); Vidal v. South American Securities Co., 276 F. 855, 868-69 (2d Cir. 1921) (shares of a Maine corporation are located in the Southern District of New York for purposes of the constructive service statute where corporation's principal place of business is also located within district); see also Leonardi v. Chase Nat'l. Bank, 81 F. 2d 19, 22 (2d Cir. 1936) (a national banking association is "established" where it maintains its principal place of business).

Citi's counterclaim for interpleader against Plaintiff and the Does for a determination of who, among Jose Domingo's heirs, is entitled to the Citi Shares, is an action for which the use of 28 U.S.C. § 1655 is appropriate. See Bache Halsey, 519 F. Supp. at 685-87 Fidelity & Guar.

---

[5] Even if Citigroup, Inc. was the true successor to The National City Bank of New York, which it is not, as a Delaware corporation with its principal place of business in New York, New York, the Shares would still be property located within the Southern District of New York according to the constructive service statute.

11

Life Ins. Co. v. Freeman, 94 F. Supp. 2d 689, 691 (D. Mass. 2000) (service by publication ordered for defendants in interpleader action).

In this matter, the Does are the potential Cuban heirs of Jose Domingo, whose names are unknown to Citi, and who could not be identified by Citi without legal documentation from Cuba, which notably Plaintiff herself has failed to provide to Citi. Accordingly, Citi seeks to serve notice upon the Does of Citi's counterclaim for interpleader by publicizing, in a paper of general circulation, such as the New York Times, the Daily Business Review and the El Nuevo Herald, an order from this Court for the Does to appear and plead by a date certain.[6] See A/S Krediit Pank v. Chase Manhattan Bank, 155 F. Supp. 30, 37 (interpleader action against "John Doe" foreign defendants wherein court ordered service by publication on unknown "John Doe" defendants); United States v. Estate of Swan, 441 F. 2d 1082, 1085-86 (court ordered service by publication on absent defendant in a paper of general circulation, where the district court was located, in interpleader action).

## Conclusion

WHEREFORE, pursuant to 28 U.S.C. § 1655, Citi moves this Court to allow Citi to serve Jane Does I – X and John Does I – X, Citi's counterclaim for interpleader by publishing notice of its counterclaim in the New York Times, the Daily Business Review and the El Nuevo Herald for once a week for six consecutive weeks, and any other relief this court deems proper and just.

---

[6] Citi has submitted a proposed order granting this Motion. In compliance with 28 U.S.C. § 1655, the proposed order states that the notice of Citi's counterclaim will be published once a week for six consecutive weeks. It further grants the Does 10 (ten) business days in which to respond to the counterclaim once any Doe receives notice of Citi's action for interpleader relief.

CASE NO.: 07CV6286 (GRD)

Respectfully submitted,

/s/ Edward M. Mullins
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
José I. Astigarraga, Edward M. Mullins, Elena M. Marlow
Fla. Bar No. 263508, 863920, 139858 & 817031
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel:(305) 372-8282
Fax:(305) 372-8202
E-mail: emarlow@astidavis.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2007, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: **Omar Ortega, Esq.**, Dorta & Ortega, P.A., 2222 Ponce de Leon Blvd., Suite 306, Coral Gables, FL 33134. I further certify that service was effected by U.S. Mail on Chief Counsel, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW – Annex, Washington, DC 20220.

/s/ Edward M. Mullins
Edward M. Mullins

F:\WDOX\CLIENTS\10016\5002\00065675.DOC