UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 07-CV-6286 (GBD)

JUSTA C. MORALES, as personal
representative of the ESTATE OF
GUSTAVO A. MORALES,

      Plaintiff,

v.

CITIGROUP, INC. f/k/a THE NATIONAL
CITY BANK OF NEW YORK,

      Defendant.
_____/

### DEFENDANT CITIGROUP, INC.'S MOTION TO STRIKE PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL AND TO DISMISS CLAIMS WITH RESPECT TO FATHER'S SHARES WITH PREJUDICE AND ACCOMPANYING MEMORANDUM OF LAW

Defendant Citigroup, Inc. ("Citi") moves to strike Plaintiff's Notice of Voluntary Dismissal Without Prejudice (DE 1), and to dismiss Count IV for Conversion and Count V for Equitable Accounting, as it relates to the alleged shares of Tomas Morales (DE 4, S.D. Fla. docket).

Plaintiff has sought to dismiss her claims against Citi as they relate to the shares of Tomas Morales by filing a Notice of Voluntary Dismissal (DE 31). While Plaintiff agrees to the dismissal of these portions of her Amended Complaint, she does not agree to a dismissal with prejudice. Citi, however, contends that dismissal should be with prejudice, for all of the reasons explained more fully below. Therefore, the only issue before this Court is whether dismissal should be with or without prejudice. As set forth in detail in the accompanying Memorandum of Law, the Court should dismiss this portion of Plaintiff's claims with prejudice.

CASE NO.: 07-CV-6286 (GBD)

## MEMORANDUM OF LAW

### BACKGROUND

This case arises from Gustavo Morales' claim of alleged entitlement to certain shares of Citi stock that were issued to his now-deceased uncle, Jose Morales Morales in Cuba in the 1930s (the "Uncle's Shares"), and to additional shares that allegedly were issued to his now-deceased father, Tomas Morales in Cuba around about the same time (the "Father's Shares"). Gustavo Morales passed away on March 6, 2006, and Plaintiff Justa C. Morales, as Personal Representative of the Estate of Gustavo Morales, was substituted as Plaintiff.

With respect to the Uncle's Shares, the parties are in disagreement as to whether there exists sufficient evidence that the Citi record owner of the Shares, Jose Morales Morales (the uncle) ever transferred the Shares to Gustavo Morales. The parties also dispute the interest and dividends owed to the proper owner of the Uncle's Shares.

The parties' dispute with regard to the so-called Father's Shares are more fundamental. Citi has absolutely no record evidence that these Shares ever were issued. For her part, Plaintiff also admits that she lacks any evidence that those Shares exist.

### Citi's Investigation Reveals That No Shares Were Issued or Held in the Father's Name

In conjunction with the Motion to Transfer to this Court, on **April 25, 2007**, Citi filed the Declaration of Peter Pellegrine, Senior Vice President of Citi's Issuer Services Operations, who, at the time of filing the Affidavit was the Senior Vice President in Depositary Receipts Operations and Agency and Trust Operations (DE 27-5, S.D. Fla. docket). Mr. Pellegrine attested as follows: "Citi . . . investigated Mr. Morales' claims and searched its records in New York with regard to his claim that his deceased father also owned shares of stock, but its records show that no such shares exist." Pellegrine Declaration ¶ 4.

Indeed, Citi kept records of the identity of the owner of each and every share of its stock at all times. At the end of every year, Citi does a reconciliation to ensure that all stock is accounted for. Citi even accounts for unclaimed stock that escheats to the state.

Prior to 1961, Citi kept manual records reflecting the issuance of all its shares, including transfers and dispositions of shares. Until the embargo, Citi had no reason to segregate or track stock owned by Cuban nationals.

Due to the embargo, in 1961, Citi identified all stock owned by Cuban nationals at that time. Specifically, Citi segregated its then-existing manual records for those blocked share accounts (about 60 in total / one box of records). Those records consisted of an original ledger card reflecting when the stock credit was issued and to whom it was issued. Those records also included copies of the share certificates. If Citi's records reflected that Gustavo Morales' Father, Tomas Morales was a Cuban national holding shares in Citi at that time, his manual account record would have been segregated together with the manual account records of the other Cuban nationals. No such record exists.

In 1961, Citi also began depositing all dividends payments generated by shares owned by Cuban nationals into an escrow account in New York. It also created original ledger cards tracking those dividend payments. If Citi's records reflected that Gustavo Morales' Father was a Cuban national holding shares in Citi at that time, a ledger card tracking dividend payments to the Father would have been created, and Citi would have begun depositing the dividend payments due to him into the escrow account at that time. No such records exist.

In 1964, Citi was required to report for the first time to the United States Treasury Department assets held by Cuban nationals. Citi thus prepared form TRF-607 for each one of the blocked accounts and submitted them as required. If Citi's records reflected that the Father

was a Cuban national holding shares in Citi at that time, Citi would have prepared a form TRF-607 for his account. No such records exist.

In the 1970s, Citi converted to an automated (computerized) account system. The basic account information (such as the account holder's name and account balance) for the previously identified blocked accounts was converted to an electronic format (the underlying information from the manual records is retained on microfiche). If Citi's records reflected that Gustavo Morales' Father was a Cuban national holding shares in Citi at that time, a computerized account record would have been created for his account. No such records exist.

Citi's Depositary Receipts Department is responsible for its file maintenance and retention policies with respect to historical records of share ownership in Citi and its predecessors. It is also responsible for investigating Plaintiff's claim of entitlement to Citi stock, and for the interest and dividend calculations on shareholder accounts, including "blocked" Cuban national shareholder accounts.

Citi has conducted an investigation and searched its records in response to Plaintiff's claims with regard to shares allegedly purchased by Gustavo Morales' Father. Specifically, Peter Pellegrine, Clifford Kendelhardt, and Douglas Reed, all of whom are Vice Presidents in Citi's Depositary Receipts Department, personally have undertaken efforts to locate evidence to support Plaintiff's claims that that shares of Citi stock issued to Tomas Morales, a deceased Cuban national, exist. That investigation has yielded no such evidence.

### **Plaintiff Admits That She Has no Evidence That the Father's Shares Exist**

It is, therefore, not surprising that Plaintiff lacks any evidence that the Father's Shares even exist.

It is undisputed that Plaintiff does not have in her possession, and cannot verify the existence of, the Father's Shares. In fact, during the course of discovery, Plaintiff has admitted that she does not have in her possession, custody, or control copies of the Father's Shares; that she has no documents or other evidence in support of her assertion that the Father purchased the Father's Shares; and that she has no documents or other evidence any documents reflecting that the Father's Shares exist.[1] To the extent such shares exist, and Citi does not believe that they do, Plaintiff has no proof that the Father ever transferred or gifted them to Gustavo Morales.[2]

To that end, Citi requested that Plaintiff produce the following documents, to which Plaintiff responded in each instance that it has no such documents in her possession, custody, or control:

- Request No. 4

    All documents that evidence, show, or reflect that Jose Domingo or Tomas Morales purchased the alleged Tomas Morales Shares, as alleged in Paragraph 8 of the Amended Complaint, including, but not limited to, the original stock certificates or photocopies thereof.

    Response to Request No. 4

    Plaintiff is not in the possession, custody or control of any documents in response to the present request. Plaintiff believes that these documents are in the possession of the Defendant. Once these items are obtained they will be identified accordingly.

Of course, as stated in detail above, Citi's extensive investigation has revealed that Citi has no records that the Father's Shares even exist.

- Request No. 16

    All documents that evidence, show, or reflect that Gustavo Morales is or was the heir and owner of the alleged Tomas Morales Shares (the Father's Shares).

---

[1] See Pl.'s Resp. to Request for Production nos. 4, 14, 32; see also Plaintiff's Resp. to Citigroup's First Request for Admissions nos. 4, 5, 8.
[2] See Pl.'s Resp. to Request for Production nos. 16, 20, 23.

CASE NO.: 07-CV-6286 (GBD)

Response to Request No. 16

All documents responsive to this request, except for those protected by the attorney client privilege, which are in Plaintiff's care, custody or control are available for copying and inspection...

Indeed, Plaintiff has produced documents, none of which even remotely demonstrate that Gustavo Morales was the heir and owner of the Father's Shares.[3]

- Request No. 20

    The last will and testament of Tomas Morales

    Response to Request No. 20

    Plaintiff is not in the possession, custody or control of any documents in response to the present request.

- Request No. 32

    The original stock certificates constituting the Tomas Morales Shares.

    Response to Request No.

    Plaintiff is not in the possession, custody or control of any documents in response to the present request.

Similarly, Citi served Plaintiff with the following Requests for Admission, which Plaintiff unequivocally admitted:

- Request for Admission No. 4

    Admit that you do not have in your possession, custody, or control the original stock certificates constituting the Tomas Morales Shares (the Father's Shares).

    Response to Request for Admission No. 4

    Admitted.

- Request for Admission No. 5.

    Admit that you have no documents or other evidence in your possession, custody, or control evidencing or supporting your assertion that Jose Domingo or Tomas Morales

---

[3] It should also be noted that Plaintiff's counsel has represented that they have produced all responsive documents that their client has provided to them through the present date.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

purchased the alleged Tomas Morales Shares.

<u>Response to Request for Admission No. 5</u>

Admitted.

- <u>Request for Admission No. 8.</u>

Admit that you have no documents or other evidence in your possession, custody, or control evidencing or supporting that the Tomas Morales Shares exist.

<u>Response to Request for Admission No. 8</u>

Admitted.

In the face of this compelling evidence - that the so-called Father's Shares never existed - Plaintiff <u>sua sponte</u> filed a Notice of Voluntary Dismissal with Prejudice to dismiss Count IV for conversion and that portion of Count V for equitable accounting as it relates to the alleged Shares of Tomas Morales. (DE 31). However, as noted below, this Notice of Dismissal was defective because Citi already had answered the Amended Complaint on August 31, 2007. (DE 9).

## ARGUMENT

### I. Plaintiff's Notice of Voluntary Dismissal is Improper and Should be Stricken

Federal Rule of Civil Procedure 41 allows for a Plaintiff to voluntarily dismiss an action without a court order under two circumstances:

    (i)      by filing a notice of dismissal **before** the adverse party has served either an answer or a motion for summary judgment; or

    (ii)      by filing a stipulation of dismissal signed by all parties who have appeared in the action.

Fed. R. Civ. P. 41(a)(1).

Since Citi already filed an answer on August 31, 2007, and Plaintiff failed to obtain a stipulation of dismissal signed by both parties (in fact, Citi was not even consulted about such a dismissal), Plaintiff, therefore, was required to file a motion seeking a court order authorizing a

voluntary dismissal under Rule 41(a)(2). Plaintiff's attempt to circumvent this rule is clearly improper and should be stricken as such. Indeed, in applying Rule 41(a), the Second Circuit has held that only a court order will permit an action to be dismissed at the plaintiff's instance unless all parties have agreed to a stipulation of dismissal. "Voluntary dismissal without prejudice is thus not a matter of right." Zagano v. Fordham Univ., 900 F. 2d 12, 14 (2d Cir. 1990) (motion for voluntary dismissal without prejudice was properly denied when the motion was made after years of litigation and discovery already had taken place). Instead, the Court may permit Plaintiff to dismiss this portion of the action by Court order and under conditions set forth by the Court. See Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").

Nor can Plaintiff evade this rule by amending her claim pursuant to Federal Rule of Civil Procedure 15, which requires Plaintiff to obtain a Court order permitting such an amendment, since Citi already has filed its answer. Fed. R. Civ. P. 15(a)(2) ("a party may amend its pleading only with the opposing party's written consent or the court's leave. . ."). This Court has held that a Rule 41(a) voluntary dismissal of a claim should be treated the same as a Rule 15(a) amendment eliminating a claim. See Chambers v. Time Warner, Inc., 2003 WL 1107790, *2 (S.D.N.Y. 2003) ("In all respects here relevant, a Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of the claim"); Wakefield v. Northern Telecom, Inc., 769 F.2d 109 (2d Cir. 1985 n.4) (district court may allow withdrawal of a claim under Rule 15 only using the same standard of review as a withdrawal under Rule 41).

As Plaintiff has failed to obtain a stipulation signed by the parties or a court order permitting partial dismissal of her claims against Citi, the Notice of Voluntary Dismissal is

improper under Fed. R. Civ. P. 15(a) and 41(a) and, therefore, should be stricken.

### II. Dismissal of Counts IV and V Regarding the Father's Shares Should Be *With* Prejudice

When determining whether to dismiss a claim with prejudice, this Court considers the following factors, none of which is dispositive:

(1)  The plaintiff's diligence in bringing the motion;

(2)  Any "undue vexatiousness" on plaintiff's part;

(3)  The stage of the litigation, including whether defendant has expended effort and expense to prepare for trial;

(4)  The duplicative expense of relitigation; and

(5)  The adequacy of plaintiff's explanation for the need to dismiss.

G-I Holdings, Inc. v. Baron & Budd, 2004 WL 374453, *2 (S.D.N.Y. 2004); see also Zagano, 900 F.2d at 14. Applying the test in this instance clearly demonstrates that dismissal of Plaintiff's claims, as they relate to the Father's Shares, must be with prejudice.

Plaintiff's Diligence. This case has been pending for three years – **since August 17, 2005**. It was filed initially in the Southern District of Florida by Plaintiff's deceased husband, Gustavo Morales. The case was stayed after Gustavo Morales passed away on March 6, 2006, after which time Plaintiff was appointed Personal Representative of the Estate of Gustavo Morales. During all of this time, Plaintiff had the obligation to investigate and determine whether the shares exist. Instead, in the face of Mr. Pellegrine's Declaration, filed on **April 25, 2007**, attesting that no such shares existed, Plaintiff, years after this action was filed, admitted in discovery that **she lacked any documentation or other proof to support the claim that the Father's Shares existed.**

**The claim was utterly without merit.**

Undue Vexatiousness. As noted above, this portion of the claim lacked merit from the outset. At the very least, it should have been dismissed when Citi filed Mr. Pellegrine's Declaration on April 25, 2007.

Stage of Litigation. The case has been pending for three years and has been mediated. Indeed, without revealing mediation discussions, it likely is not a coincidence that Plaintiff attempted to dismiss this portion of her claims following mediation. Citi has expended enormous and expensive resources litigating a hard-fought motion to transfer venue, conducting discovery on this meritless claim, engaging in mediation, and attending status conferences before this Court.

Duplicative Expense of Relitigation. This factor is most relevant here and supports dismissal with prejudice of the claims of the Father's Shares. Simply put, this portion of the action lacks merit. The Plaintiff has admitted she lacks no support for the claim, and she is not able to obtain such evidence. The supposed owner of the shares, Tomas Morales, has passed away. A. Compl. ¶ 9. Plaintiff's husband, the supposed transferee of this non-existent shares, also has passed away. More importantly, Citi has looked thoroughly and has absolutely no evidence that the shares exist. Allowing Plaintiff to dismiss this action without prejudice, and thereby allowing her to re-file this claim at a later date, would serve no purpose other than to subject Citi to potentially another meritless claim.

This claim only gets weaker as time progresses. The shares supposedly were purchased in the 1930's, over 70 years ago. No living person can testify what shares were actually purchased, if any. More importantly, even if the shares existed, there is no basis to believe – and no evidence possibly could surface – that this Plaintiff is entitled to those alleged shares. With respect to the Uncle's Shares, which do exist, Plaintiff has two documents upon which she

bases her claim for those shares. As will be shown later on summary judgment, those documents do not provide Plaintiff any rights to ownership.

But, here, with respect to the Father's Shares, Plaintiff lacks even such documents. There is absolutely no evidence that the shares exist, or, if they did, that Plaintiff has ownership rights to them.

Adequacy of Plaintiff's Explanation. With respect to this last factor, the Court and Citi will have to await Plaintiff's response to this motion, as she provided no explanation of why she was abandoning her claim in her Notice of Voluntary Dismissal. It is likely that she will claim that she may be able to locate the shares at some point, which seems very unlikely given that Citi has no evidence that they were issued, and that it has been 70 years since they were supposedly issued. Again, even if Plaintiff were somehow miraculously able to produce 70 year old shares issued to Tomas Morales for National City Bank, she still would have to show a transfer of those shares to her deceased husband, Gustavo Morales.

This claim is completely without merit.

The case of G-I Holdings, 2004 WL 374453, decided by this Court, is instructive. There, the plaintiff sought to withdraw part of its claim, without prejudice, after discovery had failed to support the allegations of that particular portion. The defendants objected to the withdrawal without prejudice and moved for a dismissal with prejudice. Since the plaintiff previously had amended their complaint, the court found they would need a court order allowing an amendment and treated the withdrawal as a motion to amend the complaint to dismiss a claim under Rule 41(a)(2). See id. at *1. Upon consideration of the above factors, the court noted: "The parties have spent over a year and a half litigating this claim, and have engaged in substantial motion practice. Holdings [plaintiff] waited until two months after the close of discovery to bring the

motion, and even then did not bring it under the correct procedural posture." Id. at *2. Because the "defendant would suffer prejudice" if the claim was withdrawn without prejudice, the court dismissed the claim *with* prejudice. See id.

The present case is analogous to G-I Holdings, in that discovery has failed to support the allegations of the portion of the claim that Plaintiff seeks to dismiss without prejudice.[4] A significant amount of time and effort has been devoted to litigating that portion of the claim and, like in G-I Holdings, Plaintiff has sought dismissal improperly. Therefore, the portion of the claim relating to the Father's shares should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Citi respectfully requests that the Court strike Plaintiff's Notice of Voluntary Dismissal Without Prejudice (DE 31), and dismiss Count IV for Conversion (A. Compl. ¶¶ 37-42) and Count V for Equitable Accounting as to Tomas Morales (A. Compl. ¶¶ 43-49) with prejudice, and any other relief this court deems proper and just.[5]

## CERTIFICATE OF COMPLIANCE

At the status conference held on June 10, 2008, the Court instructed the parties to attempt to resolve their dispute with respect to the relief sought herein. Undersigned counsel certifies that they discussed the issues raised in this motion with opposing counsel and were unable to obtain an agreement with respect to Citi's request that dismissal be with prejudice.

---

[4] See Plaintiff's Resp. to Request for Production nos. 4, 14, 32; see also Plaintiff's Resp. to First Request for Admissions nos. 4, 5, 8.
[5] Pursuant to Federal Rule of Civil Procedure 41, this Court may condition dismissal on any grounds that it deems just, including the award of attorneys' fees and costs. See Fed. R. Civ. P. 41(a)(2).

CASE NO.: 07-CV-6286 (GBD)

Respectfully submitted,

/s/ Edward M. Mullins
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
José I. Astigarraga, Edward M. Mullins, Jenelle La Chuisa
Fla. Bar No. 263508, 863920 & 0539988
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel:(305) 372-8282
Fax:(305) 372-8202
E-mail: emullins@astidavis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 24, 2008, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: **Rey Dorta, Esq.**, Dorta & Ortega, P.A., 2222 Ponce de Leon Blvd., Suite 306, Coral Gables, FL 33134.

/s/ Edward M. Mullins
Edward M. Mullins